SENSENDERFER, *Appellant*, v. KEMP, *et. al.*

1. **Land:** EQUITABLE TITLE. Where one intended to and did locate certain government land and received a duplicate certificate of entry and went into possession, he will be held to have the equitable title, although in his original application the land was misdescribed.

2. **Equity:** LAND AND LAND TITLES. Where the legal title to land has passed from the United States to one but it ought to go to

another, a court of equity will declare the holder of the legal title a trustee and compel a conveyance to the party having the paramount equity.

3. **Legal Title :** KNOWLEDGE OF EQUITABLE TITLE.  Where one has the equitable title to land and another obtains the legal title with knowledge of such equitable title, the former has the superior equity and the latter will be held to hold such legal title in trust for him, and under the statute of this state may be divested of such legal title without a conveyance.

4. **Constructive Notice :** DEEDS.  One is not charged with constructive notice of deeds of record when he does not claim by or through them.

5. **Actual Notice :** ADVERSE CLAIM.  Notice of an adverse claim of title to land is actual when the purchaser either knows of its existence, or is conscious of having the means of knowledge, although he may not use them.

6. **The Judgment** not reversed under the circumstances of this case because of defect of parties.

*Appeal from Pettis Circuit Court.*—HON.  J.  P. STROTHER, Judge.

AFFIRMED.

*E. J. Smith* and *W. S. Shirk* for appellant.

(1)  If there was a mistake on the part of W. R. Kemp or the officers of land office whereby Kemp entered land in section 25 instead of section 24, it should have been corrected by the secretary of the interior under the laws of the United States. U. S. R. S., secs. 2369, 2370 *et seq.;* and the state court had no jurisdiction to grant the relief asked in the case. *Smelting v. Kemp,* 104 U. S. 636 ; *Quinby v. Conlan,* 104 U. S. 420 ; *Sheply v. Cowan,* 91 U. S. 330 ; *Johnson v. Townsley,* 13 Wall. 72 ; *Moore v. Robbins,* 96 U. S. 530.  A patent to land by the United States can be vacated for mistake or fraud only by the United States. Cases cited, *supra.*  (2)  But even if the trial court, as a court of equity, had jurisdiction, the facts in evidence do not entitle defendants to the relief asked.  If there

was any mistake it was the mistake and fault of Wm. R. Kemp for the error is in his application and the defendants must suffer from it and not the plaintiffs. *Widdicombe v. Mercer*, 72 Mo. 588; *Sensenderfer v. Neale*, 66 Mo. 669. (3) Kemp's title to the land in section 25 was perfect, even without the delivery of the patent to him or any one. *U. S. v. Schurz*, 102 U. S. 378. (4) That plaintiff is only bound to take notice of the record of deeds from somebody under whom he holds, or in the same chain with himself, and consequently he was not affected with notice by the record of the deeds relied on by defendants, is shown by these authorities. *Maule v. Rider*, 59 Pa. St. 167; *Lasey v. Simpson*, 3 Stock. (N. J.) Ch. 246; *Stuyvesant v. Hall*, 2 Barb. Ch. R. 151; *Keller v. Nutz*, 5 S. R. 246; *Tilton v. Hunter*, 24 Me. 29; *Leybe v. Wolf*, 10 Ohio 83; *Lightner v. Mooney*, 10 Watts 407; *Bates v. Norcross*, 14 Pick, 224; *Emburry v. Connor*, 2 Sandf. S. C. Rep. 98; *See also Whittington v. Doe*, 9 Ga. 23. In *Crockett v. McGuire*, 10 Mo. 34, it is ruled that the recording of a deed is only notice to after-purchasers from the same grantor. The same is again ruled in *McCamant v. Patterson*, 39 Mo. 100. It follows that the patents to Greer and Payne and the deeds under which defendants claim, were improperly admitted in evidence. (5) The limitation act of 1874 (Laws of Mo. 1874, p. 118) does not apply to the facts of this case. (6) A new trial should have been granted because of newly discovered evidence. *Kochler v. Bartlett*, 16 Cen. Law Jour. 398. (7) The motion in arrest of judgment should have been sustained; it was error to give judgment in favor of one of the heirs of Kemp not a party to the action. Besides there is no offer anywhere to refund plaintiff the money he paid the United States for the land.

*Philips & Jackson* for respondents.

(1) W. R. Kemp entered the land in controversy in

1848 and he and his assignees have ever since exercised ownership over it and plaintiff cannot maintain this action. It was and is barred by the act of February 27, 1874. (Laws of Mo. 1874, p. 118). Plaintiff's patent issued in 1871 and this suit was not brought till 1879 and plaintiff's attempt to evade this conclusion by invoking certain other suits is unavailing. Nor was it competent for the legislature, in 1879, to revive a cause of action, dead, by making section 19 of the old statute, applicable, for the first time, to the case. This is well settled law. Cooley Con. Lim. 365, side paging; *Smith v. Packard,* 12 Wis. 371; *Hamell v. Hamell,* 15 Wis. 55; *McKinney v. Springer,* 8 Blackf. 506; *Wright v. Oakley,* 4 Met. 400–409; *Woort v. Winnick,* 3 N. H. 473, 482. (2) The proof is conclusive that the United States land officers issued Kemp a certificate for the land in section 24. Such certificate was the conclusion of the contract of purchase and was sufficient to sustain an ejectment. *Wickersham v. Woolbeck,* 57 Mo. 61; *Carrol v. Safford,* 3 How. 460. (3) The evidence fully sustains the decree. Sensenderfer, as shown by the evidence, was an adventurer and was conscious of means of information showing that the land was occupied by an adverse claimant. One cannot shut his eyes to the truth and be protected as an innocent purchaser. *Rhodes v. Outcalt,* 40 Mo. 370; *Stephenson v. Smith,* 7 Mo. 616. Kemp was in possession which was constructive notice to plaintiff of the nature and facts of Kemp's claim. *Buck v. Halloway,* 2 J. J. Marsh 180; 4 Cen. L. J. 123, 4; *Bartlett v. Glasscock,* 4 Mo. 62; *Landes v. Brant,* 10 How. (U. S.) 375; *Roberts v. Mosely,* 64 Mo. 507. (4) The answer converted the proceeding into an equitable one. *Hodges v. Black,* 76 Mo. 537, and the instructions need not be discussed. (5) The fact that one of the minor heirs of W. T. Kemp was not a party to the suit was plaintiff's fault and does not warrant a reversal. Being beaten on the merits defendant now seeks to escape from the decree on the ground that he failed to make one of the heirs a

party. (6) The alleged newly discovered evidence was insufficient to authorize a new trial. No sort of diligence was shown to have Rector as a witness.

BLACK, J.—This was an action of ejectment for the west half of the northwest quarter of section 24, township 47, range 21, in Pettis county. The defendants are the widow and heirs of William T. Kemp, and their tenants. The Kemps set up an equitable defense, and prayed for affirmative relief, which was granted divesting the plaintiff of his title and investing the same in these defendants, from which decree plaintiff appealed.

William R. Kemp, claiming to own this property and being in possession, made a deed of trust on the same, under which it was sold in 1853, to William Kemp, and by him conveyed to Cummings in 1868, and by the latter conveyed to William T. Kemp in January, 1869. These parties all had possession during their alleged ownership. The material issues tendered by the answer are, that William R. Kemp, entered, at the local land office at Clinton, these 80 acres in sections 24 and two forty acre tracts, one in section 14 and the other in section 23, all in the same township and range; that he received a certificate of such locations, which is lost; that the officers at Washington issued a patent to him which by mistake described the 80 acre subdivision as in section 25, instead of section 24; and that plaintiff with full notice of all this and in fraud of the defendants procured a patent for the lands sued for.

The plaintiff's title is a patent from the United States to him, dated April 20, 1871, upon an entry made with a land warrant at the local office at Boonville on December 28, 1870. The original application made by William R. Kemp, at the local office at Clinton and from that office transmitted to the office at Washington, bears date June 13, 1848, and describes the land as being in sections 14, 23 and 25, the 80 acres in the latter. It is in the handwriting of the register of the local office, Watson, and

was doubtless signed by Kemp, and with it was transmitted a military bounty land warrant calling for 160 acres issued under the act of February 11, 1847. The records at the local office at Boonville did not show that the eighty acres in section 24, the land here in dispute, had been disposed of otherwise than might be gathered from certain entries on the tract book, hereafter referred to. To prove the location by Kemp to have been made on the eighty acres in section 24 and not in section 25, the defendants show that one Greer entered the north half of the eighty acres in section 25, on the 16th of January, 1854, and a patent issued to him therefor, dated July 15, 1854, and that the south half was entered by one Payne November 29, 1853, and a patent issued to him, dated May 1, 1854. Both of these entries were made at the Clinton office. The business of that office appears to have been transferred to the Warsaw office.

It also appears that the register of the latter office, M. L. Means, on July 1, 1858, made out and certified a map of all the lands in Pettis county, with the names of the original purchasers endorsed on each sectional subdivision, from which the land in question appears as having been sold to William R. Kemp. It does not appear that the patent issued to Kemp was ever delivered to him, and the mistake was first discovered by the Kemps in 1871, when William T. Kemp called for an exemplification, and after plaintiff procured his patent. The land as described in sections 14, 23 and 24 would all lie in one body, but would not lie in a body if the eighty acres were located in section 25. The books and records of the local office at Warsaw were all destroyed by fire in 1861, and the business of that office was transferred to the Boonville office in 1863. The tract book at the latter office was compiled and made up at Washington, after the books at the local office had been destroyed from reports from the Warsaw office. It is therefore clear that the eighty acre tract in section 25 was not regarded as having been sold to Kemp by the office at Clinton, for Greer and

Payne were allowed to and did enter it after Kemp had made his location. The same may be said of the office at Washington when the patents were issued to them.

At a still later date in 1858, it would seem from the plat furnished Pettis county, the land in section 24, appeared upon the tract book at Warsaw, as sold to Kemp. Besides this, Kemp's warrant was issued under the act of February 11, 1847, which required the land upon which the same should be located to be "in a body." This provision of the law must have been disregarded by the officers if Kemp located his warrant upon the eighty acres in section 25, which is not to be assumed. In addition to all this, Mr. Thompson, a surveyor, testifies that he surveyed the land for William R. Kemp in the spring of 1849, when some question arose as to what land he had entered; that Kemp then produced his certificate which showed that he had located his warrant upon the lands in sections 14, 23 and 24, and which the witness then surveyed for him from the description contained therein. William R. Kemp knew of the entry by Payne and Greer, and induced them, at least one of them to locate the eighty in section 25. William R. Kemp had possession of the 160 acres as a whole up to the time he left for Oregon, which was in 1851 or 1852. He died on the road.

The conclusion is irresistible that Kemp intended to and did locate the land in question, that the books so showed and it was so understood at the local office and that his duplicate so stated, though there was a misdescription in the application. He acquired the equitable title to this land. The authorities cited by the plaintiff, to show that the courts cannot go behind his patent and adjust the rights of the parties, have no application to this case. When the legal title has passed from the United States to one party, and it ought to go to another, it is competent for the courts to declare the holder of such legal title a trustee, and to compel a conveyance to the party who has the paramount equity. *Garland v. Wynn*, 20 How. 6; *Lindsey v. Hawes*, 2 Black. 554;

*Johnson v. Towsley*, 13 Wall. 72; *Widdicombe v. Childers* (opinion of this court filed February 4, 1884). The prior right to this land is, as we have seen, shown to be in these defendants, and their right to the land in equity and conscience cannot be denied. If the plaintiff entered this land and acquired the legal title with knowledge of this equitable title, then, as between him and the defendants, their equity is superior, and he must be held to hold the legal title in trust for the defendants, and under the statute of this state may be divested of that legal title without a conveyance. William T. Kemp went upon this land under his purchase in 1869, built a house on it in that year of considerable value, and lived on it until October, 1873, when the house was destroyed by fire. He died in 1874. There is much evidence in the case which tends to show that plaintiff and one Widdicombe, from whom plaintiff got the warrant with which the entry was made and on the same day, were operating in concert, and that through an agent they had made inquiry and were informed that this land had been entered by William R. Kemp, and was then owned by William T. Kemp who resided on it, and that this information was received before the entry was made by the plaintiff. The circuit court found that the plaintiff had such knowledge and information and we are satisfied the finding was correct.

But aside from this, the testimony shows that in the fall of 1870 the plaintiff went to Boonville and there engaged in hunting up "mistakes" at the land office with a view of making a profit therefrom. Witnesses report him to have said that he did not want vacant or unimproved land but that he wanted improved land owned by "rich men." He knew that there were many mistakes in these books at Boonville. He saw that the eighty acres in section 25 appeared to have been entered both by Kemp and Greer and Payne. This land was close to Boonville, and Pettis county was well settled. There was surely enough to put a prudent person upon inquiry. Notice "is actual when the purchaser either knows of the existence of the

adverse claim of title or is conscious of having the means of knowledge although he may not use them." *Speck v. Riggin*, 40 Mo. 405. He is not to be charged with constructive notice of the deeds of record, through which the defendants claim, for he does not claim by or through any of them. Under the circumstances of this case, however, and in the very nature of things, open to his view and actually known by him, he was called upon to make further inquiry as to whether this land was open to a fair sale or entry. This inquiry would have led him to a full knowledge of the true state of the title and he must be charged with such knowledge. *Eck v. Hatcher*, 58 Mo. 235; 2 Pomeroy Eq. Jur., sec. 597.

It appears that a minor heir of William T. Kemp was not made a defendant. Affirmative relief was prayed for in the answer and there was no suggestion made by any pleading that there was a want of proper parties. The cause was tried upon its merits without regard to such defect, though discovered on trial. The decree is such as not to prejudice the rights of the infant, and the cause will not be reversed because of this defect in parties. The showing made for new trial on the ground of newly discovered evidence is without merit. Judgment of the circuit court is affirmed. All concur.