Hedrick v. Beeler.

HEDRICK, *Appellant*, v. BEELER.

Division One, May 23, 1892.

1. **Public Land:** PATENT: EQUITABLE TITLE. Where the legal title to land has passed from the United States to one person, and it ought, in equity, to go to another, it is competent for the courts to declare the holder of such legal title a trustee, and to compel a conveyance to the one having the paramount equity.

110 91
120 539
110 91
176 1470

2. ———: ———: ———: NOTICE. The evidence in this case *held* sufficient to show plaintiff's actual notice of defendant's equities when plaintiff purchased and obtained a patent for the land in controversy.

3. Equitable Title: NOTICE TO ATTORNEY. Notice to one's attorney in the matter of procuring a patent for land constitutes notice to the principal.

*Appeal from Schuyler Circuit Court.*—HON. ANDREW ELLISON, Judge.

AFFIRMED.

*A. C. Widdicombe* and *Edward Higbee* for appellant.

(1) In order to divest appellant of his legal title, the clearest evidence is required: *First.* That the respondent, or those claiming under him, applied for and entered the land in controversy, and, *second,* that appellant had notice thereof at the time of his entry. Applications for the purchase of land were, by the act of twenty-fourth of February, 1810, required to be made in writing, describing the tract sought to be entered, and subscribed to by the applicant. U. S. Revised Statutes, sec. 2355; 2 Public Land Laws and Opinions, p. 451. In this case the original application of Robert Mercer to locate warrant, number 35,772, is for land in range 19, and not for the land in controversy. *Sensenderfer v. Neale,* 66 Mo. 669. (2) The entry of said warrant location of Mercer on any records of the land-office other than on range 19 was without warrant and authority of law, and a nullity. *Carman v. Johnson,* 29 Mo. 84. (3) The appellant, at the time of his entry, had no notice of the pretended claim of respondent. *Sensenderfer v. Smith,* 66 Mo. 80; *Sensenderfer v. Neale,* 66 Mo. 669; *Widdicombe v. Mercer,* 72 Mo. 588. (4) The essential thing is, that one invoking the aid of a court of equity to reverse the act of the land department should be able to show that he had done all that

the law required of him, and that by the record and case, as made in that department, the decision ought to have been made for him. *Lytle v. Arkansas*, 9 How. 314; *Stark v. Starrs*, 6 Wall. 402; *Bohall v. Dilla*, 114 U. S. 47. (5) The patent from the United States, dated July 12, 1886, vested in appellant the legal title to the land sued for. *Griffith v. Deerfelt*, 17 Mo. 31; *Steel v. Smelting Co.*, 106 U. S. 447. The land in this case was vacant. There was no application to enter or locate it by Robert Mercer, under whom the respondent claims, and nothing whatever upon the records of the land-office to indicate, in any manner, that he had any right to it.

*Shelton & Dysart* for respondent.

(1) Plaintiff relies on his legal title through his patent of August 11, 1885, and defendant on a prior equitable title through the entry of Robert Mercer on July 30, 1856, of which plaintiff had notice. Plaintiff holds the legal title in trust for defendant, the equitable owner. A legal title acquired for a valuable consideration with knowledge of an outstanding equitable title, or with knowledge of such facts as would put a conscientious, prudent man upon inquiry, is held subject to that equity. 1 Story's Equity [12 Ed.] sec. 395; Bispham's Principles of Equity, sec. 262; *Widdicombe v. Childers*, 84 Mo. 382; *Widdicombe v. Childers*, 124 U. S. Co–Ops. 426; *Meier v. Blume*, 80 Mo. 179; *Swisher v. Sensenderfer*, 84 Mo. 104; *Sensenderfer v. Kemp*, 83 Mo. 581; *Eck v. Hatcher*, 58 Mo. 235. (2) The patent to appellant does not conclude respondent in his equitable rights, after the title has passed from the government, as in this case, and the question has become one of private rights. Equitable interference may be invoked to ascertain whether or not the patentee

does not hold, in trust, for the equitable claimant. *Johnson v. Townsley*, 13 Wall. 72; *Minnesota v. Batch-elder*, 1 Wall. 109; *Silver v. Ladd*, 7 Wall. 219; *Stark v. Star*, 6 Wall. 402; *Carman v. Johnson*, 29 Mo. 84; *Widdicombe v. Childers*, 84 Mo. 382; *Widdicombe v. Childers*, 124 U. S. 427; *Sensenderfer v. Kemp*, 83 Mo. 581. (3) Notice consists of direct information of a fact brought home to a party, or knowledge of such facts as would put a conscientious, prudent man upon inquiry, or it may be constructive by record. Bispham's Principles of Equity, sec. 268; 1 Story's Equity [12 Ed.] sec. 395, *et seq.; Widdicombe v. Childers*, 84 Mo. 382; *Widdicombe v. Childers*, 124 U. S. 427; *Sensenderfer v. Kemp*, 83 Mo. 581; *Eck v. Hatcher*, 58 Mo. 235.

SHERWOOD, P. J.—Action of ejectment in usual form commenced April 13, 1887, to recover possession of northeast quarter, southwest quarter, section 36, township 66, range 16, in Schuyler county. The trial was upon an answer setting up an equitable defense, and asking affirmative relief, alleging, in substance, that on July 30, 1856, one Robert Mercer "intended to enter, applied for, and, in fact, did enter," at the land-office at Milan, Missouri, the lands sued for, with land warrant number 35,772, act of March 3, 1855; that, by mistake of the register of the land-office at Milan, said entry was posted on the tract book of said register's office erroneously describing the land as being in range *19*, instead of range *16*, as it was, in fact, and should have been posted, and that plaintiff, with knowledge of these facts, entered said land and obtained a patent therefor.

Upon the trial plaintiff introduced in evidence a patent from the United States granting to himself the north one-half, southwest quarter, of section 36, town-

ship 66, range 16, dated July 12, 1886, in Schuyler county.

Upon the equitable defense and in rebuttal thereof the following facts were shown: Leland Wright, register of the land-office at Boonville, testified, in substance that he had in his custody the plat books and tract books of what was once the Milan district land-office. The plat book shows the name *"Mercer"* written across the face of the north half of the southwest quarter, section 36, township 66, range 16, and just over the word Mercer, on the same tract, there appears a dim mark which looks as though it might be intended for the word canceled.

The tract book shows the north one-half, southwest quarter, section 36, township 66, range 16, entered by Robert Mercer, assignee of Harriet Smith, July 30, 1856, by military land warrant number 35,772; there is, at an irregular place marked on the page of this entry, the words, "canceled May 4, 1861," also, in red ink, the words, "erroneously posted, see range 19." The tract book also shows that the north one-half of southwest quarter of section 36, township 66, range 19, was entered by Robert Mercer, July 30, 1856, by same land warrant number 35,772. This entry is also marked as canceled May 4, 1861, "warrant returned to general land-office July 8, 1885." The tract book also shows that the northwest quarter of the southwest quarter of section 36, township 66, range 19, was entered by Michael H. Herbert, by military land warrant, and the name Herbert is written across this tract on the plat book. The custom of the offices at the time these entries were made was, in case of warrant entries, to put the name of the purchaser across the tract entered on the plat book, and to post in the tract book from this memorandum. At that time, when applications were made for vacant land, the register would go to

the plat book as his guide as to what lands were vacant, and was governed by the notations appearing in the same. Nine-tenths of the applications were written by the register, and then signed by the applicant. The tract book also shows that north one-half, southwest quarter, section 36, township 66, range 16, was entered by Robert G. Hedrick August 11, 1886.

Robert Mercer testified that he came from Indiana to Missouri in 1856, and entered at the land-office at Milan the north one-half, southwest quarter, section 36, township 66, range 16; entered the land in person with land warrant, and never had notice that the entry had been changed or canceled. The warrant had never been returned to him.

Mercer sold, and by deed of general warranty conveyed, the land to George Foster April 16, 1863, and under mesne conveyances from him, defendant claims. The defendant had been in the actual possession of the land since 1879, and was never advised of an adverse claim until about the time this suit was commenced. Some official correspondence with the land department at Washington City was had in evidence. From this correspondence the following additional facts were developed. Mercer's land warrant 35,772 was returned to the register and receiver at Boonville by letter of commissioner of general land-office dated May 4, 1861, with directions to notify Mercer that his entry in section 36, township 66, range 19, had been canceled, and that warrant would be returned on surrender of certificate of location. A written application was made by Mercer July 30, 1856, to locate said warrant number 35,772 on north one-half, southwest quarter of section 36, township 66, range 19, instead of 16. Nothing in the office at Washington showed the location to have been in range 16.

Plaintiff made application to enter north one-half, southwest quarter of section 36, township 66, range 16, July 20, 1886. Patent issued August 16, 1886, and transmitted to A. C. Widdicombe, Boonville, Missouri, who acknowledged receipt August 24, 1886.

It was shown that Mr. A. C. Widdicombe had resided at Boonville for about twenty-five years, and was a sharp, shrewd land lawyer, was perfectly familiar with the land-office records, and was an expert in the business of the office; and had had a great deal to do in contested land cases growing out of conflicting entries in that and other land-offices.

The case was tried in the court without a jury, and the finding and judgment were for defendant and plaintiff appealed.

I. The equitable principles which govern cases of this character are well settled and need only be abstractly stated. One who attempts to enter a particular tract of land, then vacant, and subject to entry, and, with the intention or doing so, pays his money, or delivers a warrant to the proper government officer, acquires an equity in the land, though the written application required to be made, by a mistake and error in writing it, should misdescribe the land, and wholly omit the tract intended; and this equity may be enforced against one who afterwards, with knowledge of the facts which establish the equity, obtains the legal title from the United States to the same land. As was said by Chief Justice WAITE in *Widdicombe v. Childers*, 124 U. S. 404: "Under such circumstances, a court of chancery can charge him as trustee and compel a conveyance which shall convert the superior equity into a paramount legal title. The cases to this effect are many and uniform. The holder of a legal title in bad faith must always yield to a superior equity.

As against the United States his title may be good, but not as against one who had acquired a prior right from the United States in force when his purchase was made under which his patent issued. The patent vested him with the legal title but it did not determine the equitable relations between him and third persons." See also authorities cited.

"When the legal title has passed from the United States to one party, and it ought to go to another, it is competent for the courts to declare the holder of such legal title a trustee, and to compel a conveyance to the party who has the paramount equity." *Sensenderfer v. Kemp*, 83 Mo. 587; *Widdicombe v. Childers*, 84 Mo. 384.

That Mercer intended to locate his land warrant upon the land in dispute and attempted to do so, and that the register of the land-office at Milan received his warrant knowing his intention, is so well established by the evidence that consideration of the question or comment upon the evidence is unnecessary. The indorsement made by the register across this tract on the plat book, and the entry made at the time on the tract book are conclusive of the intention without resort to the positive testimony of Mercer himself to that effect.

II.   The only remaining question is whether plaintiff had actual notice of defendant's equities when he purchased the same land and obtained a patent from the United States. If he had such notice, then the judgment of the circuit court is without error. "Notice is actual when the purchaser either knows of the existence of the adverse claim of title, or is conscious of having the means of knowledge although he may not use them." *Speck v. Riggin*, 40 Mo. 405; *Sensenderfer v. Kemp*, 83 Mo. 588; *Eck v. Hatcher*, 58 Mo. 235; *Leavitt v. La Force*, 71 Mo. *loc. cit.* 356.

The entry was made in 1886. At that time very little land, if any, in that part of the state was vacant. The copy of the plat book on file in the recorder's office of Schuyler county showed the entry of this land by Mercer. The original plat book on file in the register's office at Boonville showed the same. The tract book showed the "north half of southwest quarter, of section 36, township 66, range 16, purchased by Robert Mercer, assignee of Harriet Smith, July 30, 1856, Milan land warrant number 35,772. Acts, March 3, 1885." At an unusual place for such an entry appears the following: "Canceled, May 4, 1861," and the following: "Erroneous posting, see range 19." Turning to the same tract in range 19, we find that the northwest quarter of the southwest quarter, of section 36, was entered May 23, 1854, by one named Herbert. The north half of southwest quarter of section 36 was also posted here in range 19, but was also marked, canceled May 4, 1861. This showed the same warrant 35,772, and a memorandum that the warrant was returned to the general land-office July 8, 1885. These facts appeared from the records, and which plaintiff must have seen before acting in making his entry. These facts showed beyond dispute that Mercer had deposited his land warrant, parted with it in 1856, and it had not been returned to him July 8, 1885. It appeared beyond dispute that when he parted with his warrant he intended to enter the eighty acres in either range 16 or 19. It appeared that on that date the eighty acres in range 16 was vacant, while forty of the eighty in range 19 had been entered two years before. It seems very clear that a reasonably prudent and conscientious person with this information would have prosecuted his inquiries until all the facts had been ascertained, and availed himself of every clue leading to a discovery of such facts.

It appeared, also, from the evidence that an attorney named Widdicombe was assisting plaintiff in procuring his title. This attorney, the evidence shows, had lived in Boonville twenty-five years, was "especially a sharp, shrewd land lawyer, familiar with the land-office, well posted in contested land cases growing out of conflicting entries." Notice to this agent was notice to the plaintiff. *Meier v. Blume*, 80 Mo. 180; *Hayward v. Ins. Co.*, 52 Mo. 181.

In an issue involving matters of equity, full disclosures ought reasonably to be expected of all facts within the knowledge of the parties. The fact that neither plaintiff nor his agent Widdicombe testified on the trial as to the notice they may have had of the entry of Mercer is a circumstance having almost the significance and force of an admission of such knowledge. It can hardly be conceived that they would have remained silent as to a matter necessarily within their own knowledge, unless conscious that to speak the truth would defeat their case. *Henderson v. Henderson*, 55 Mo. *loc. cit.* 559; *Cass Co. v. Green*, 66 Mo. 498; *Baldwin v. Whitcomb*, 71 Mo. *loc. cit.* 658.

We think the conclusion of the circuit court fully justified by the evidence, and consequently affirm the judgment. All concur.