HEDRICK, *Appellant*, v. THE ATCHISON, TOPEKA &
SANTA FE RAILROAD COMPANY *et al.*

Division Two, February 27, 1894.

1. **Public Land:** PATENT: PURCHASER IN GOOD FAITH. One who
takes a patent for a section of public land with knowledge that the
records of the land office relative to such land show alterations,
changes and erasures, is put upon inquiry and is not a purchaser in
good faith.

2. ———: MISTAKE IN APPLICATION: VESTED INTEREST. An applicant
for a section of public land acquires a vested interest in such section
by the issuance to him of a certificate of entry therefor, though the
application misdescribes the range in which the section is situated.

*Appeal from Adair Circuit Court.*—HON. ANDREW
ELLISON, Judge.

AFFIRMED.

Ejectment brought September, 1890, for a strip of
land which forms the right of way of the defendant
railroad company through the west half of the south-
east quarter of section 28, township 61, range 14, in
Adair county. The appeal was taken under the pro-
visions of section 2253, Revised Statutes, 1889, only a
certified copy of the decree made in this cause, etc.,
being sent up to this court, which decree was
entered in favor of the defendant company and the
other defendants, and plaintiff has appealed therefrom.

Plaintiff relies on a patent from the United States
for the eighty which includes the litigated land, which
patent is dated July 20, 1886. The answer of the
defendant company consisted of a general denial,
admission of possession, and the following: "And
defendant further alleges that by the laws and statutes
in such cases made and provided, it long prior to the

bringing of plaintiff's action acquired good right and title to said premises, and the possession thereof.

"And for another and further defense defendant says plaintiff and those under whom he claims have never been in possession of said premises, or any part thereof, and have never paid any taxes thereon, but defendant and its grantors have been in actual, open, notorious and adverse possession of said premises for more than thirty (30) years next before the filing of plaintiff's petition in this cause, holding and claiming said premises and every part thereof against all persons whomsoever, paying the taxes thereon in good faith, and making lasting and valuable improvements thereon.

"And for another and further defense to plaintiff's petition defendant says that on July 25, 1856, one Cavil M. Freeman duly and legally entered the west half of the southeast quarter of section 28, township 61, range 14 (which said tract includes the land described in plaintiff's petition), by laying and locating thereon under the military bounty land act of March 3, 1855, military bounty land warrant 8470, and thereupon received of the register of the land office at Milan, Missouri, at which office the said land was subject to entry, a certificate of such entry.

"That by accident, mistake or oversight, the application of said Freeman failed to describe said land, and placed it in some other range, but that it was the intention of said Freeman to enter said west half hereinbefore described, as it was also the intention of the said register and receiver that he should enter said land, and locate said warrant upon said land, and thereupon J. Seaman, then the register of said land office, issued to him said certificate in which said land was properly described as the west half of the southeast quarter of section 28, township 61, of range 14, and

that proper notations of such entry were made and
entered upon the tract and plat books of said office,
showing the facts of said location and entry; that said
Freeman thereupon accepted said certificate from said
register, and delivered said land warrant therefor, and
entered into the possession of the land so entered,
to wit: the said west half of the southeast quarter of
section 28, township 61, range 14, and so remained in
possession thereof, and paid taxes thereon until the
twenty-ninth day of February, 1860, when he by
general warranty deed sold and conveyed said premises
to one William A. Lane, who entered into the posses-
sion thereof and paid the taxes thereon until the
fifteenth day of April, 1875, when he by general
warranty deed sold and conveyed the same to one
William E. Parcells, who thereupon entered into pos-
session and paid the taxes thereon; that by means of
regular mesne conveyances the right and title of
Parcells was sold and conveyed to John G. Saunders
and James G. Wilson, and all of said grantees of said
Saunders and said Wilson entered into actual posses-
sion of said premises and improved the same in good
faith, and paid the taxes thereon until the first of
January, 1887, and said Wilson and Saunders by their
several conveyances sold the premises described in
plaintiff's petition to the Chicago, Santa Fe & Cali-
fornia Railway Company of Iowa, which thereupon
entered into a possession thereof, and commenced in
good faith the construction of its line of railroad over
said premises at great expense; that on the seventh
day of March, 1887, said Saunders and Wilson in
pursuance of their several contracts, conveyed said
premises by their several warranty deeds to said rail-
way company, under which company defendant by
regular conveyances claims to own said premises and
the right to the possession thereof, and has in good

faith made lasting, permanent and very valuable improvements thereon.

"That said Cavil M. Freeman nor his assigns have ever at any time made any claim upon the land which, by mistake, was described in the application of said Freeman, to locate said land warrant, nor has he nor they at any time ever been in possession of said land, or paid any taxes thereon, but both he and they have at all times held and claimed the land herein in controversy as the land entered and located by the said Freeman at said time and place.

"That on the twentieth day of July, 1886, the plaintiff, with full knowledge and notice of the location of said land warrant and the entry of said land by said Cavil M. Freeman, and the fact of the possession of the said Freeman and his grantees, and also the notations of said tract and plat books in the land office, for the purpose of cheating and defrauding the then owners of said land and their grantors, did fraudulently and willfully cause the notations and entries of the said tract and plat books to be changed and altered, and did fraudulently enter said land, and cause to be issued to himself therefor a patent thereon from the general government, with the view of cheating and defrauding the then owners of said land and their grantors, and to secure the same with the valuable improvements thereon. That afterwards, on the seventh day of January, 1887, he filed said patent for record in the office of the recorder of deeds in Adair county, Missouri, and the same was duly recorded in book 17, at page 469, of the records of said office.

"The defendant is informed and believes that one A. C. Widdicombe, who a long time has been a practicing attorney before the land office at Boonville, Missouri, in which office the records, books and papers of the former office at Milan, Missouri, were then

and are now kept, and who is the son-in-law of the plaintiff, was the plaintiff's agent and attorney, and conducted and transacted the business for plaintiff, and secured said patent to be so as aforesaid fraudulently and illegally issued. And this defendant avers that said Widdicombe at the time of making said entry and securing said patent for plaintiff, and long prior thereto, had full knowledge of all the facts and circumstances connected with the entry of said Freeman, and also the knowledge that said land was occupied and owned by the grantees of said Freeman. And defendant is also informed and believes that while said land is entered and patented in plaintiff's name, that the said Widdicombe is the real beneficiary of said transaction, and that he has large, if not the sole pecuniary interest in said land, and is in fact and in truth the real party plaintiff in interest in this action.

"Defendant avers that it and its grantors have by reason of the premises acquired and become possessed of, and in equity and good conscience are entitled to, all the equitable right and title of said premises and every part thereof, and that it would be wholly inequitable and unjust to allow plaintiff to take said premises from them, and that in equity plaintiff is and ought to be held as a mere trustee of the legal title for the use and benefit of defendant, wherefore defendant prays that the plaintiff be declared a trustee for the defendant, and that whatever title he may have, if any, by reason of the said entry and patent, be divested out of the plaintiff and vested in this defendant, and for all other and proper relief, orders and decrees that should in equity and good conscience be given, that are reasonable and right, and for general relief."

The defendants Saunders and Wilson, on their own application were made parties defendant and filed an answer to plaintiff's petition similar in substance and

effect to that filed by the defendant company. Plaintiff filed a motion to strike out a portion of the answer of Saunders and Wilson, which it seems was denied, because on the same day, April 28, 1891, that this motion was filed, the plaintiff filed a replication to the answer of said Saunders and Wilson. The answer of the defendant company as found in the abstract of defendants, has been carefully compared with the original, and we have also read the original answer of Wilson and Saunders, as well as the motion by plaintiff to strike out, and his replication to said answer. We sent for the original bill of exceptions and papers in this case, because of the following statement made in a supplemental brief by plaintiff's attorneys, A. C. Widdicombe and others, to wit: "The 'additions, alterations, corrections, exceptions and suggestions' offered as an additional abstract by respondent, are not warranted by the record. *First.* The equitable count in defendant's answer, purporting to be set out in full by respondent, is not verified by the record. *Second.* No separate answer of defendants Wilson and Saunders, neither in matter nor substance, was filed by either. They were made parties by their own motion, and leave given to plead within thirty days. No further mention appears of said parties in the record and no pleadings were filed by either of them." From the facts already set forth, the statement just copied can not be *true*, nor can such statement be deemed the result of a mere *mistake.*

The decree in this cause as before stated, was entered for the defendant company and also for the other defendants for costs. In the decree findings were made on all the prominent issues, to wit: That Cavil M. Freeman, (under whom the defendant company claims through mesne conveyances) at the district land office at Milan, Missouri, located military bounty land

warrant number 8470, act of congress March 3, 1855, upon the west half of the southeast quarter of section 28, township 61, range 14, west, which includes the land in question, and thereupon received a certificate of entry for said west half, etc., from the register of said land office, which entry was duly and properly posted on the books and records of said land office, by proper notation, and entries in the tract book, plat book and monthly abstract book; but by mistake said land was described in the application of Freeman as being in range 17 instead of range 14; that Freeman sold and conveyed the land he had thus bought, and he and his grantees have, ever since his entry of the land, paid taxes thereon and exercised acts of ownership over the same, and that since April, 1875, said grantees have been in actual and continuous possession of said land, making lasting and valuable improvements, viz., fencing, dwellings and barns; that the plat book in the office of the county-clerk of Adair county, certified by the register of the land office in 1866, shows said west half in range 14 had been entered and located by said Freeman, and the books in said land office continued to show said entry of Freeman until some time after 1874, when first additions and alterations began to be made; that said Freeman intended to enter, and did enter, said west half in range 14, and the land officers in the land office at Milan, Missouri, knew said intention of said Freeman, and that he intended to enter said tract, and they intended him to enter said tract, whereby he became and was vested with the equitable right to said land and to a patent therefor from the government. That in 1885, while defendants Saunders and Wilson were in the actual occupation of said land, plaintiff taking advantage of the mistake made in said application, by his agent A. C. Widdicombe, who was also his son-in-law, and an expert lawyer, who had full

knowledge of the original entries and notations in said books and records of the land office, as well as of the additions, alterations, erasures and defacements of said books and records then and now existing, made application for said tract of land, and did thereafter on the twentieth of July, 1886, secure a patent for said land. That plaintiff is not a purchaser in good faith, but is chargeable with full knowledge of all the rights and equities of the defendants therein, and holds the title evidenced by the patent as trustee for the defendant railroad company, etc. The decree then proceeds to divest the title out of plaintiff and to vest it in the defendant company, etc. Other facts will be stated as hereafter necessary.

*A. C. Widdicombe, James H. Johnston* and *F. M. Harrington* for appellant.

(1) No claim is advanced that Cavil M. Freeman, or any other person, ever in fact applied to purchase or locate the west half of the southeast quarter of section 28, township 61, range 14, prior to the entry thereof by this plaintiff, and his receipt of a patent therefor in 1886. (2) Even conceding that the plaintiff or his agent was familiar with the records and methods of the land office in disposing of public lands, it is nevertheless true that there was not a record in existence, when he made his application, which evidenced a previous sale of the land in controversy. (3) The evidence offered by defendants to prove mistake on the part of Freeman or the land office in issuing a patent, is insufficient to overcome the record evidence submitted by plaintiff. *Sensenderfer v. Neal,* 66 Mo. 669; *Widdicombe v. Mercer,* 72 Mo. 588. (4) In order to divest plaintiff of his legal title the clearest evidence is required. *First.* That the defendants, or those under whom they claim,

applied for and entered the land in controversy; and *second*, that the plaintiff had notice thereof at the time of his entry. Applications for the purchase of public land were, by the act of twenty-fourth of February, 1810, required to be made in writing, describing the tract sought to be entered and subscribed to by the applicant, and the same applied to the location of land warrants. R. S. U. S. sec. 2355; 2 Public Land Laws and Opinions, p. 451; 1 Lester's Land Laws, p. 574. (5) An application, to be made in conformity with the law, is the officer's power to act—of his authority to issue a patent. A patent issued without such application would be void. A patent issued without proper authority is void. *Patterson v. Winn*, 11 Wheaton, 380; *Easton v. Salisbury*, 21 Howard, 430. (6) The presumption is that the land officers rightfully performed all their duties in selling the land and issuing the patent, and it devolves on the party assailing the patent to show it was issued without authority of law. *Collins v. Bartlett*, 44 Cal. 371. In order to present a case in relation to the entry of lands of which courts of equity will take cognizance, it must distinctly appear that the land officers were mistaken, not in the facts, but in the law of the case. *Hosmer v. Wallace*, 47 Cal. 461; *Baldwin v. Stark*, 107 U. S. 463; *Quinby v. Colan*, 104 U. S. 420. (7) The essential thing is that one invoking the aid of a court of equity to reverse the act of the land department should be able to show that he had done all the law required of him, and that by the record in the case as made in that department the decision ought to have been made for him. *Lytle v. Arkansas*, 9 How. 314; *Stark v. Starrs*, 6 Wall. 402; *Bohall v. Dilla*, 11 U. S. 47. (8) Laches, as well as positive fault, is a bar to equitable relief. Lapse of time is held to bar relief. *Clark v. Johnston*, 18 Wall. 493; *Sullivan*

*v. Railroad,* 94 U. S. 806; *Brown v. County,* 95 U. S. 161; *U. S. v. McGraw,* 12 Fed. Rep. 449.

*Ben Eli Guthrie, Joseph Park* and *Frank Sheetz* for respondents.

(1) If Freeman intended to enter the eighty in range 14, and the officers of the land office, knowing his intention, accepted his land warrant and issued to him the certificate of entry therefor, he then became owner of all the equitable estate and his right to a patent then and there vested and became fixed, unalterable and irreversible without his consent. The subsequent entry by plaintiff was without authority of law and void. *Writ v. Branson,* 98 U. S. 118; *More v. Robbins,* 96 U. S. 530; *Simmons v. Wagner,* 101 U. S. 260; *Morton v. Blankenship,* 5 Mo. 346; *Wickersham v. Woodbeck,* 57 Mo. 59. (2) The trial court found the intention of Freeman and the officers to be to enter the land in question, and there is manifest evidence to support the finding even in the appellant's abstract, and this court will not interfere with the verdict. *Rothschild v. Railroad,* 92 Mo. 91; *Pike v. Martindale,* 91 Mo. 268. (3) As Freeman intended to, and did, locate the land in suit, and the entry and sale by its proper description were entered on the books of the local land office, the misdescription in the application will not defeat his equitable title, and in ejectment by a subsequent patentee he may have affirmative equitable relief. *Hedrick v. Beeler,* 19 S. W. Rep. 492; *Widdicombe v. Childers,* 84 Mo. 382; s. c., 124 U. S. 400; *Sensenderfer v. Kemp,* 83 Mo. 581; *Carpenter v. Montgomery,* 13 Wall. 480. *Hedrick v. Beeler, supra,* is the last of this series of cases in this court, and is decisive of this case. But see, also, *Rector v. Gibbon,* 111 U. S. 276; *Carman v. Johnson,* 29 Mo. 84; *Barksdale v. Brooks,* 70 Mo. 197. (4) Freeman's entry entitled him to a patent,

and was equivalent to a patent issued. *Stark v. Starr*, 6 Wall. 402; *Garland v. Wynn*, 20 Howard, 6; *Lindsay v. Hawes*, 2 Black, 554. (5) The tract book in the county clerk's office is sufficient to show the government has parted with the title and to recover on in ejectment. *Wilhite v. Barr*, 67 Mo. 284. It is the unquestioned practice in ejectment, if plaintiff has not at hand a patent, to introduce and bottom his right to recover on the county plat book. *Payne v. Lott*, 90 Mo. 676. (6) A certificate of entry subjects the land to taxation, and to sale by the state for public dues. *Gray v. Givens*, 26 Mo. 302, where the court cites and follows *Carroll v. Safford*, 3 Howard (U. S.), 441. (7) Plaintiff in making his entry in 1885 did so with knowledge of sufficient facts and circumstances to put him on his inquiry, and so had notice of all defendant's rights. *Hedrick v. Beeler*, 19 S. W. Rep. 492; *Widdicombe v. Childers*, 84 Mo. 382; *Sensenderfer v. Kemp*, 83 Mo. 581.

SHERWOOD, J.—There was ample evidence to support the decree obtained in the court below. Although the action as begun was ejectment, yet the answers setting up equitable defenses converted the whole proceeding into an equitable one; this, of course, does away with any necessity for examining the declarations of law asked.

As will have been perceived, the controversy hinges on the number of the range, whether 14 or 17. The first paper offered on behalf of defendants, was the following, to wit: a certificate of location and entry by Cavil M. Freeman.

"MILITARY BOUNTY LAND ACT OF MARCH 3, 1855.

"MILAN, MO., REGISTER'S OFFICE, July 25, 1856.

"Military Land Warrant number 8470, in the name of Thomas Huelkeld has this day been located by Cavil

M. Freeman upon the west half of the southeast quarter of section 28, in township 61, of range 14, subject to any pre-emption claim which may be filed for said land within forty days from this date.

"Contents of tract located, eighty acres.

"J. SEAMAN, Register."

They next introduced the plat book from the office of the clerk of the county court of Adair county certified by the register of the land office, July 16, 1866, as follows:

Section 28, township 61, range 14.

Cavil M. Freeman, July 25, 1856

[Copied from the township plat-book in the office of the county clerk, Adair county.]

Then follow mesne conveyances consisting of warranty deeds by which the land in question was conveyed to the defendant company and to its immediate grantors.

They also introduced in evidence exhibits "B," "F" and "D," as follows:

# EXHIBIT B.

## Township 61 North, Range No. 14 West, District of Chariton, Mo.

| Part of Section. | Section. | Township. | Range. | Acres. | 100ths. | Dollars. | Cents. | Dollars. | Cents. | NAME OF PURCHASER. | DATE OF SALE. | NUMBER OR REG. CERT. AND CER. TIFICATE OF PURCHASER. | TO WHOM PATENTED. | DATE OF PATENT. | Volume. | Page. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| †640 N½ Ne¼ | 28 | 61.N | 14 W | 80 | 00 | | 75 | 60 | 00 | John Glasgow | 1855 Augt 27 | 6336 | †x | | | |
| Se Ne & E½ Se | " | " | " | 120 | 00 | 1 | 75 | 90 | 00 | Hugh Chapman | 1855 Oct 2 | 7013 | †x | | | |
| Sw Ne | " | " | " | 40 | 00 | | 25 | 50 | 00 | John Glasgow | 1853 Dec 11 | 8268 | †x | | | |
| { E½ Nw¼ & Nw¼ Nw, see sec 20 | " | " | " | 120 | 00 | 1 | 25 | 50 | 00 | Wm. B. Morrison | 1857 Sept 26th | 14060 | | | | |
| { Sw¼ Nw qr †* W½ Se¼ | " | " | " | 40 80 | 00 | 1 | 25 | 100 | 00 | Robert G. Hedrick | Sept 1, 1855 | 42621 | | | | |
| W½ †* Se †① (Error.s hou ld be in R. 17) see e C om. let ter Feby 15 ('1887.) | | | | 80 | 00 | Cavil M. | | Free | ma | n, Ass. of Thomas Huelkeld. | 1856, July 25 | | Military land warrant No. 8470, act of 3rd March 1855. Belongs to R. 17 | | | |
| { E½ Sw¼ & Sw¼ Sw¼, see sec 20 | " | " | " | 120 | 00 | | | | | Henry Cem | 1841, Feby 24 | 22837 | †See 28-61-15 | | | |
| E½Se¼ 29 &Nw¼Sw¼ Ne¼ Se¼ 29 & Nw¼ Sw¼ | " | " | " | 80 | 00 | 1 | | 7 | — | John W. Link | Oct.29th,1870 | 8106 | H, Act May 20, '62 Commuted Hd No 8106 | Commuted, see cash receipt 41487 | | |
| Ne¼ Se¼ 29 & Nw¼ Sw¼ | " | " | " | 80 | 00 | 1 | 25 | 100 | 00 | Jno. W. Link | May 30, 1871 | 41487 | | | | |

† Written in pencil.

† Written in pencil.

U. S. Land Office, Boonville, Mo., Dec. 26, 1890.

I, William McCracken, Register of the U. S. Land Office at Boonville, Mo., do hereby certify that the above and foregoing is a true and correct exhibit and copy of Sec. 28, Twp. 61, of Range 14 W. as the same appears on the tract book on file in this office. On the line where the W½ Se¼ appears, marked * ☞ and no,ed in red ink, viz: (Error should be in R.. 17;) there appears to have been an erasure where the name "Cavil M. Freeman Ass. of Thomas Huelkeld" appears; also on the same line an erasure appears at the word "Military" and the words Cavil M. Freeman Ass. of Thomas Huelkeld written; in also the word "Military" is written in at the place of the last named erasure.

And I further certify that this office is not provided with a seal.

Wm. McCRACKEN, Register.

# EXHIBIT F.

## Township 61 North, Range No. 17 West, District of Chariton, Mo.

| DESCRIPTION OF TRACT. | | | | CON-TENTS. | | RATE PER ACRE. | | PUR-CHASE MONEY. | | NAME OF PURCHASER. | DATE OF SALE. | NUMBER OF RECEIPT AND CERTIFICATE OR PURCHASE. | TO WHOM PATENTED. | DATE OF PAT-ENT. | WHERE RECOR-DED. | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Part of Section. | Section. | Township. | Range. | Acres. | 100ths. | Dollars. | Cents. | Dollars. | Cents. | | | | | | Volume. | Page. |
| * W½ Se¼ * | * 28 * | * 61 N * | 17 W | 80 | 00 | * | * | * | * | * n, Assgn of Thomas Huelkeld | * * * July 25, 1856 Military | * * * | * * Land Warrant 8,470, Oct. 1855. | * * * | | |
| Se¼ †Cancelled See Letter Jan 12, 1861 | " | " | " | 160 | 00 | Pitt Coo Cavil M. | ke, A Free ma | ss. | | James Long | 1857 May 21st M L warrant | No. 7709 act 3 rd March 1855 | | | |
| E½ Se¼ | " | " | " | 80 | 00 | 1 | 25 | 100 | 00 | Wm. M. Vancleve | Sept 19, 1885 | 42624 | | | | |

I, Wm McCracken, Register of the United States Land Office at Boonville, Mo., do hereby certify that the above and foregoing abstract of the W½ Se. ¼, Sec. 28, Twp. 61, of Range 17, West, is a true copy of the tract book on file in this office. Also abstract of Se¼, Sec. 28, Twp. 61, R. 17, to Pitt Cooke, Ass. James Long. Also E½ Se. ¼, Sec. 28, Twp. 61, R. 17, to Wm. M. Vancleve, which is a true and correct copy of the tract book on file in this office.

And I further certify that this office is not provided with a seal.

U. S. Land Office, Boonville, Mo., Dec. 26, 1890.

WM. McCRACKEN, Register.

## EXHIBIT D.

[Act 3rd March, 1855.]

Monthly abstract of locations on Public Lands "subject to private entry," made for the month ending July 31st, 1856, at the Land Office at Milan, Mo., on Military Land Warrant Certificates, issued pursuant to the 1st Section of the Act of Congress, entitled "An act in addition to certain acts granting Bounty Land to certain officers and soldiers who have been engaged in the military service of the United States," approved March 3, 1855.

| Register's and Receiver's No.* | Number of the Warrant. | WARRANT CERTIFICATE. | | IN WHOSE FAVOR. | TRACT LOCATED. | | | | DATE OF LOCATION. | BY WHOM LOCATED. | REMARKS. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Date. | No. of Acres. | | Quarter Section, or part of Quarter Section. | Township | Range | Contents. | | | |
| * * | * | * * * | * | * * * | * * * | * | * | * | * * * | * * | * * * |
| 1252½ | 8470 | Oct. 11th, 1855 | 80 | Thomas Huelkeld | W½ Se | 61 | 17 | 80 | July 25, 1856 | Cavil M. Freeman. | This was omitted on the register, hence the half No. |

Land Office, Boonville, Mo., Dec. 26, 1890.

I, Wm. McCracken, Register of the United States Land Office at Boonville, Mo., do hereby certify that the foregoing is a true copy of the abstract of warrant locations, Act of March 3, 1855, as the same appears of Record in this office. The figures 17, describing the range, shows an erasure, and the figures 17, inserted.

Wm. McCRACKEN, Register.

They also introduced in evidence, exhibit C. attached to McCracken's deposition, as follows:

EXHIBIT C.

"BOONVILLE, Mo., Dec. 26, 1890.

"I, Wm. McCracken, Register of the United States Land Office at Boonville, Missouri, do hereby certify that the diagram hereto attached is a true copy of section 28, township 61, range 14 west, as the same appears on the plat on file in this office, as near as I am able to trace the same, and that there are some interlineations and figures in the west half of southeast quarter and the southwest quarter of northeast quarter of said section 28, which are unintelligible or illegible.

"WM. McCRACKEN,
"Register."

Then they introduced in evidence, relating to the plat book of 28–61–17, and also the certificates of the register thereto, as follows;

EXHIBIT G.

"U. S. Land Office, Boonville, Mo., Dec. 26, 1890.

"I, Wm. McCracken, Register of the U. S. Land Office, Boonville, Missouri, do hereby certify that the above diagram is a true tracing and copy of section 28; township 61, range 17, as the same appears on the plat book, on file in this office.

"And I further certify that this office is not provided with a seal,          WM. McCRACKEN,

"Register."

Next in evidence they introduced "Exhibit 31." Mr. Guthrie offers and reads in evidence the plat book of Adair county relating to section 28, township 61, range 17, in words and figures following, to wit:

EXHIBIT 31.

Section 28, township 31, range 17.

Pitt Cook,
May 21st, 1857.

[Copied from the township plat book in the office of the county clerk of Adair county.]

This plat was certified July 16, 1866, as was the one heretofore mentioned. The exhibit last copied, is that taken from defendant's abstract, and it conforms exactly, to the *original* bill of exceptions now before us. Plaintiff's abstract has, and calls for, *no such exhibit as 31*, and on pages 51 and 52 of his abstract is this: "Mr. Guthrie offered and read in evidence the plat book of

Adair county, relating to section 28, township 61, range 17, in words and figures following, to wit:"

Section 28, township 61, range 17.

Cavil M. Freeman, July 25, 1856.

[Copied from the township plat book in the office of the county clerk, Adair county.]

A similar *departure* from the original bill of exceptions occurs in the alleged "transcript of the record," which was filed in this court by plaintiff's counsel after the term began, without any request on our part, and after the cause had already been brought up on a short transcript, as aforesaid. The alleged transcript indeed, in its index calls for exhibits ranging from *1* to 33, but number *31 is omitted* as well in the index as in the body of the transcript, and in its place is substituted "exhibit 30," which was the first paper offered by defendants as before stated, and had already been copied at page 18 of the alleged transcript, as "exhibit 30," but was made to do duty again as "exhibit 30," on page 88, of the same document, where range *14* was changed to *17* and where instead of Pitt Cook's

name under date of May 21, 1857, covering the whole of the southeast quarter of section 28, is found that of Cavil M. Freeman, under date July 25, 1856, covering only the west half of the southeast quarter of section 28. With these *slight* discrepancies, however, plaintiff has made a very excellent copy of the original "exhibit 31" though he does not appear to be acquainted with it by that name. Other exhibits called for have not been copied in the original bill of exceptions, nor in plaintiff's abstract.

Evidence was also adduced showing a thorough familiarity of plaintiff's attorney, Widdicombe, for twenty-five years with business before the land office, in the disposal of the public lands, as well as a familiarity with the records of said office; this much he admits himself. Among other questions asked him was the following:

"*Q.* State if the following entry appeared on the record at the time you made the application for Mr. Hedrick: 'West half of southeast quarter, section 28, township 61, range 14, eighty acres, Cavil M. Freeman, assignee of Thomas Huelkeld, 1856, July 25, military land warrant No. 8470, act third March, 1855.' *A.* I have no doubt that it did, with the additional notation thereon 'belongs to R. 17,' which means range 17."

In January, 1887, after the filing of the patent for record, by Widdicombe, defendants Wilson and Saunders sent their attorney, Mr. Joseph Park, to Boonville to investigate the matter. He examined the tract book in the land office and found this notation: "W. ½, S. E. ¼ of section 28, township 61, range 14, 80 acres, Cavil M. Freeman, assignee of Thos. Huelkeld, July 25, 1856, military land warrant, No. 8470, act March 3, 1855." Now, that was the numbers of the record at that time without any erasure or any interlineations. The notation on the plat book on the

west half of the southeast quarter of section 28, township 61, range 14, was "Cavil M. Freeman, July 25, 1856."

Park is corroborated as to the condition of the notations on the books in the land office in January, 1887, by the letter from the Assistant Commissioner of the General Land Office at Washington, of February 15, 1887, and addressed to the register and receiver at Boonville: "Gentlemen:—I am in receipt of your letter of January 27, 1887, stating that your records show that the west half of the southeast quarter of section 28, township 61, range 14, was located by Cavil M. Freeman, July 25, 1856, per warrant number 8470, act 1855, and that you were 'shown an abstract of title from the records of Adair county, Mo., a regular chain from the said Freeman to the present occupant of the land, Mr. James H. Saunders.'"

Three years later, December, 1890, Mr. Park returned to Boonville to take the depositions for use in this case. He found the entries relating to the tract in question as follows, on the tract book: "On December 26, 1890, there appeared on this line, this star in pencil and marked in red ink 'Belongs to R. 17.' And where the words 'Cavil M. Freeman' now appear is a plain erasure and mutilation, and then in darker and much later ink the name of Cavil M. Freeman, rewritten in the same place. And where the word 'military' is written is a plain erasure and a total destruction of whatever had been written there, and the word 'military' is written in black ink at a much later date, and from its appearance in a different handwriting from the name and the other writing that was not erased."

The star on the Freeman entry, made in pencil, seemed to be referred to from the Hedrick entry, which had been posted a line or two above, and had a similar pencil star to it. The Freeman entry was also at that

time marked by an index hand in pencil with the finger pointing to the Hedrick entry above. At the right hand end of the line on which the Freeman entry was noted, was added in red ink, "Belongs to R. 17." This red ink notation was in the handwriting of Gustave Reiche, whose whereabouts prior to and at the trial defendants were not able to ascertain.

It also appears that after the receipt of the letter of February 15, 1887, from the general land office, the then register, Mr. Wright, had written on the right hand end of the line of the tract book on which the Hedrick entry was posted, in red ink, the words: "Correct; see Com. letter, February 15, 1887;" and had inserted on the line on which the Freeman entry was noted, and just after "W. $\frac{1}{2}$ S. E. $\frac{1}{4}$" in red ink these words, figures and characters: "Error should be in R. 17; see Com. letter, February 15, 1887."

As to the plat book, in December, 1890, Mr. Park found the following: "The witness' attention was called to exhibit 'C,' attached to McCracken deposition, which he stated he compared with the original the best he could, and saw it made—traced. The condition as shown, is correct so far as we could make the marks, but there was so many erasures and re-markings that nothing but a glass could show it all. In January, 1887, the name of Cavil M. Freeman, July 25, 1857, appeared on the west half of the southeast quarter of section 28, township 61, range 14, on the plat book. On December 26, 1890, the west half of the southeast quarter of section 28, township 61, range 14, didn't appear to have the name of Cavil M. Freeman so it could be read at all. There appeared to have been erasures and mutilations, so that this plat is as correct a tracing as the register could make it, but it scarcely reads anything at the present time."

The monthly abstract of location under military

land warrants (exhibit D) was examined by Mr. Park in December, 1890. Witness identified exhibit D, attached to McCracken's deposition, and stated he had seen the book from which it was made. "I can not testify whether the figure 7 in 17 under the range column is as when copied but I can tell you what appeared there. Just as plain an erasure of the figure 4 where the figure 7 is written as anything can be."

The records as to section 28, township 61, range 17, and the testimony in relation thereto are briefly as follows: "Exhibit F," copied from the tract book, shows "W. ½ S. E. qr. Cavil M. Freeman, Assignee, etc., July 25, 1856, Military Land Warrant, 8470, Act 1855." Then follows in red ink: "SE ¼ * * Pit Cooke Ass. James Long, 1857, May 21," etc. The notation now has a line run through a portion of it with a pencil, and just at the left and running down under the "S. E. ¼" there is penciled these words: "Cancelled. See letter, June 12, 1861." Next below the Cooke entry came: "E. ½ S. E. ¼ * * * 80.00, 1.25, 100.00. Wm. M. Vancleve, Sept. 19, 1885," etc.

Mr. Park does not remember positively the condition of the tract book in 1887, save that it showed that Cooke had entered the north half and the south half, and the notation was in pale red ink. "I examined the Vancleve entry in December last, and it compared in color, freshness, age and handwriting with the Freeman entry." Hoge, the receiver of the Boonville land office, testifies that the Vancleve and Freeman entries are in the same handwriting, that is, as far as the entries go. "I think the entries immediately preceding and succeeding the entry of Vancleve and the entry of Cavil M. Freeman are in the same handwriting and in pale red ink. The entries of Vancleve and Cavil M. Freeman are in black ink."

Evidence was also introduced on behalf of defend-

ants showing actual possession of the premises by them or those under whom they claimed in 1875 and continuously maintained ever since; that taxes on said land have been paid ever since, and that Freeman had, up to the time he conveyed the land in 1860 by general warranty deed, claimed the land now in controversy.

As will have been noticed, this cause in all its essential features and predominant characteristics is the counterpart of *Hedrick v. Beeler*, 110 Mo. 91, 19 S. W. Rep. 492, heard before the same circuit judge as this cause, and with a like result as in the present instance. In *Beeler's case*, there were alterations, mutilations, erasures, etc., of the record, and the name of *A. C. Widdicombe* appears as an assistant to the same plaintiff in procuring his title in that case; so, also, in this. We have had several cases in this court of contests over land, and in each of them, where *that* name appeared, there also invariably followed in its wake as *coincidences*, erasures, alterations and mutilations of the record. *Hedrick v. Beeler, supra; Widdicombe v. Childers*, 84 Mo. 382; s. c., 124 U. S. 400; *Widdicombe v. Mercer*, 72 Mo. 588; *Hedrick v. Stohl*, 105 Mo. 43.

That most outrageous changes in the case at bar have been made on the respective books in the land offices, is patent to even casual observation. Now these changes in the records were not *accidental;* pen and pencil without some hand to guide them do not, in the ordinary course of human events, make erasures or alterations on records, or deface the same. There was a *motive* then, at the back of these alterations and a hand to back that motive and effectuate it. Defendants Saunders and Wilson would be moved by every consideration of self-interest to maintain the record as it was, while only plaintiff or some one interested in his success, would be desirous of making any change.

If these alterations existed only to the extent

already set forth as admitted by Widdicombe, then that was sufficient to put Widdicombe, the agent, or undisclosed principal, on inquiry, and this was sufficient as notice. If on the other hand, as Widdicombe says in another place, the records were in precisely the same condition as now, when he entered the land, then certainly, owing to the *very looks* of the records as shown by the exhibits C, G, and others, there could not be any quibble whatever over the question that thereby he was put on inquiry, and that is undoubtedly sufficient as evidence of notice; for a purchaser *with notice* and a purchaser *in bad faith* are correlative terms, and the holder of a legal title in bad faith must always yield to a superior equity. In such case, the holder of the legal title may be secure as against the United States, but not as against one who had acquired a prior right from the United States in force when his patent issued. *Widdicombe v. Childers*, 124 U. S. *supra.*

Again, Freeman complied with all the terms and conditions necessary to entitle him to a patent to the tract of land in controversy; having done so, he acquired a vested interest therein, and became the equitable owner thereof, and while his entry or location remains in full force, his rights in the premises can not be defeated by the issuance to another party of a patent to the same tract. The public faith has become pledged to the prior party, and any subsequent grant of the same tract to another party is void, unless the first location be vacated. *Wirth v. Branson*, 98 U. S. 118; *Branson v. Wirth*, 17 Wall. 32; *Moore v. Robbins*, 96 U. S. 530; *Stark v. Starrs*, 6 Wall. 402. And the fact that a patent was issued to Freeman for a different tract of land, can not affect or defeat his right to the premises in dispute. *Wirth v. Branson, supra.*

We have been cited to the case of *Widdicombe v. Mercer*, 72 Mo. 588, and *Sensenderfer v. Neale*, 66 Mo.

669, and especially the latter, as decisive of this case. Doubtless this is so; but, as shown by the former cases cited, we have long since ceased to follow those cases.

Holding these views, we affirm the decree of the circuit court.   All concur.