## WIRTH *v.* BRANSON.

1. Where, in ejectment, it appeared that a location of a military bounty land-warrant, duly made by A. on the demanded premises, the same being a part of the surveyed public land of the United States, had not been vacated or set aside, — *Held,* that a subsequent entry of them by B. was without authority of law, and that a patent issued to him therefor was void.
2. A party who has complied with all the terms and conditions which entitle him to a patent for a particular tract of public land, acquires a vested interest therein, and is to be regarded as the equitable owner thereof. While his entry or location remains in full force and effect, his rights thereunder will not be defeated by the issue of a patent to another party for the same tract.
3. *Branson* v. *Wirth* (17 Wall. 32) commented on and approved.

ERROR to the Circuit Court of the United States for the Southern District of Illinois.

The facts are stated in the opinion of the court.

*Mr. Horatio C. Burchard* for the plaintiff in error.

*Mr. S. Corning Judd, contra.*

MR. JUSTICE BRADLEY delivered the opinion of the court.

This case was before us at the December Term, 1872. *Branson* v. *Wirth,* 17 Wall. 32. It comes before us now on a different state of facts; the original patent to Giles Egerton, which was not produced on the former trial, being produced on the trial which has taken place since our decision, and purports to be for the southeast quarter of section 18, instead of the northeast quarter in controversy. The question is, whether this fact changes the rights of the parties. A statement of the case, however, is necessary, in order to show the precise questions which are now raised by the record.

The action is ejectment, brought by the plaintiff in error to recover a quarter-section of land in Fulton County, Illinois; namely, the northeast quarter of section 18, township 4 north, range 2 east, from the fourth principal meridian. On the trial, the plaintiff produced a regular patent for the lot, issued by the United States to one Edward F. Leonard, dated Feb. 20, 1868; and a conveyance from Leonard to himself.

The defendants then offered in evidence a duly exemplified copy of a military land-warrant, No. 13,598, bearing date Dec.

3, 1817, issued to one Giles Egerton, a sergeant in the 26th regiment United States infantry, and purporting to be in pursuance of the second section of the act of May 6, 1812, and certifying that said Egerton was entitled to one hundred and sixty acres of land, to be located agreeably to said act on any unlocated parts of the six millions of acres appropriated for that purpose, — it being conceded that the lot in question is part of said military reservation. They then proved by an exemplified record of the General Land-Office at Washington, that the aforesaid land-warrant was located according to law on the tenth day of January, 1818, by Giles Egerton, on the lot in question. The defendants then gave in evidence an exemplified copy from the records of the land-office of a patent from the United States to Giles Egerton, dated Jan. 10, 1818, reciting that he had deposited the said land-warrant, No. 13,598, in the land-office, and granting to him the said lot. On the margin of this certified copy of the patent was written a memorandum, without date, as follows: —

"This patent was issued for the S. E. ¼ instead of the N. E. ¼ as recorded; sent a certificate of that fact to E. B. Clemson, at Lebanon, Ill's, see his letter of 19th May, 1826."

The plaintiff insisted that this memorandum should be read with the record of the patent. In accordance with our decision in the former case, the court refused to allow it to be read. The defendants then offered in evidence a deed from Giles Egerton to Thomas Hart, dated July 29, 1819, for the southeast quarter of section 18, reciting that the same was granted to said Giles in consideration of his military services, as would appear by a patent dated Jan. 10, 1818. The defendants then gave in evidence an exemplified copy of a patent from the United States to one James Durney for the said southeast quarter of section 18, dated Jan. 7, 1818 (three days prior to the date of Egerton's patent), referring to land-warrant No. 5144 as the basis of the grant. The defendants then gave in evidence a tax-title for the lot in question, being a deed from the sheriff of Fulton County, Illinois, to one Timothy Gridley, dated Nov. 14, 1843, under a judgment of June Term, 1840, for the taxes for the year 1839; and also several mesne conveyances from the said

Gridley to the defendants in February, 1849; and they proved
that they and their grantors had occupied, cultivated, and had
full and undisturbed possession of the land ever since November, 1843, paying the taxes thereon. The plaintiff objected to
the reception of this evidence relating to the tax-title and
possession.

In rebuttal of this defence the plaintiff gave in evidence a
deed for the southeast quarter of section 18 from Thomas Hart
to Samuel F. Hunt, dated May 12, 1824; also a deed from
Hunt to one Eli B. Clemson, dated April 7, 1825; and from
Clemson to one John Shaw, dated Oct. 20, 1829; also an act
of Congress, approved March 3, 1827, entitled " An Act for the
relief of the legal representatives of Giles Egerton," by which
it was enacted that the legal representatives of Giles Egerton,
late a sergeant, &c., be authorized to enter with the register of
the proper land-office, any unappropriated quarter-section of
land in the tract reserved, &c., in lieu of the quarter patented
to said Giles on the 10th of January, 1818, which had been
previously patented to James Durney. The plaintiff further
proved that John Shaw, assignee of Giles Egerton, on the 6th
of April, 1838, entered another quarter-section in pursuance of
this act. The plaintiff then gave in evidence the original
patent, dated Jan. 10, 1818, given to Giles Egerton for the
southeast quarter of section 18, purporting to be based on
the warrant in his favor, numbered 13,598. All this rebutting evidence of the plaintiff was objected to by the defendants,
but was received by the court.

Upon this evidence, each party asked the court for instructions; and the instructions given were, 1st, that the defendants
had proved that the land in controversy was granted by the
United States to Giles Egerton on the 10th of January, 1818,
and that Egerton had conveyed it to Thomas Hart, which constituted an outstanding title that defeated the plaintiff's right
of recovery; 2d, that defendants had shown that on the 10th
of January, 1818, the land-warrant of Giles Egerton was
duly located on and upon the land in controversy, which location was not shown to be vacated or set aside, and therefore
said land was not subject to entry by or grant to Leonard in
1868: and a verdict was thereupon given for the defendants.

To these instructions the plaintiff excepted; and whether they were correct is the question now before the court.

Each of these instructions was based upon undisputed facts; and if either was correct in point of law, the defendants had a complete defence, and the judgment must be affirmed.

We are satisfied that the second instruction, at least, correctly expressed the law of the case, and renders the production of the original patent to Egerton entirely immaterial. The land in question was shown to have been located in his favor in due form, under a regular military land-warrant, and no attempt was made to show that this location was ever vacated or set aside. Whilst it was in force, no other could lawfully be made on the same land. A subsequent location, though followed by a patent, would be void. Every thing was done which was required to be done to entitle Egerton to a patent for the land. Being for military bounty, no price was payable therefor. The land became segregated from the public domain, and subject to private ownership, and all the incidents and liabilities thereof.

The rule is well settled, by a long course of decisions, that when public lands have been surveyed and placed in the market, or otherwise opened to private acquisition, a person who complies with all the requisites necessary to entitle him to a patent in a particular lot or tract is to be regarded as the equitable owner thereof, and the land is no longer open to location. The public faith has become pledged to him, and any subsequent grant of the same land to another party is void, unless the first location or entry be vacated and set aside.

This was laid down as a principle in the case of *Lytle et al.* v. *The State of Arkansas et al.* (9 How. 314), and has ever since been adhered to. See *Stark* v. *Starrs*, 6 Wall. 402. Subsequent cases which have seemed to be in conflict with these have been distinguished from them by the fact that something remained to be done by the claimant to entitle him to a patent; such as the payment of the price, the payment of the fees of surveying, or the like. The proper distinctions on the subject are so fully stated in the case of *Stark* v. *Starrs* (*supra*), *Frisbie* v. *Whitney* (9 Wall. 187), *The Yosemite Valley Case* (15 id. 77), *Railway Company* v. *McShane* (22 id. 444), and *Shepley et al.* v.

*Cowan et al.* (91 U. S. 330), that it would be supererogation to go over the subject again.

But it is said that Giles Egerton and his grantees and all other persons are estopped from any claim under his location of the northeast quarter of section 18, by his accepting a patent for the southeast quarter; and by the further fact, that his grantee, finding the southeast quarter already granted to another party (namely, to James Durney), applied to Congress for leave to make, and actually made, another location in lieu thereof.

This question of estoppel was fully considered by us when the case was formerly here; and the principles which were then laid down are equally decisive of the case as it now stands. The original patent to Egerton had not then been exhibited in evidence, it is true; but we do not see that the case is materially altered by its production.

The difficulty of applying the doctrine of estoppel arises from the fact that there is no privity between the defendants and the parties who procured the act of Congress referred to. The defendants rely, and have a right to rely, on the fact that the lot in question was located in due form of law, and that it thereby became exempt from further location until the first location should be set aside. The fact that a clerical error was made in the patent issued to Egerton; that his grantees, instead of claiming the northeast quarter (as they might have done), claimed the southeast quarter, which had been previously granted to another person; and that they solicited the privilege of locating another lot in lieu thereof, — are all matters with which the defendants have nothing to do. Congress might have given to those parties a dozen lots without affecting the defendants, unless the latter were in some way bound by their acts. We are unable to see how they were or should be bound thereby. They do not claim under those parties, and have no privity with them whatever.

As, however, the question of estoppel was fully discussed in the previous judgment, it is unnecessary to enlarge upon the subject.

*Judgment affirmed.*