GRAY and others v. JONES, Assignee, etc., and others.

*(Circuit Court, W. D. Missouri, W. D.  October Term, 1882.)*

1. EQUITY—TITLE NOT ACQUIRED UNDER FORGED DEEDS.

Purchasers from the grantees in deeds that have been forged acquire no title to the lands conveyed that a court of equity can protect.

2. SAME—PLEADING—TITLE.

Complainants must in their bill allege and prove their own title to the lands claimed; they cannot recover by showing that defendants have no title thereto.

3. PATENT FOR LAND—ASSIGNOR AS TRUSTEE.

A certificate of entry or location under a military land-warrant vests in the holder an equitable title to the land, and gives him a right to the patent when issued; and if he conveys the land, or assigns the certificate and afterwards obtains the patent, he becomes, under the statute, (Rev. St. § 2414,) as well as upon the plainest principles of equity, a trustee for the person to whom he had previously sold or assigned.

4. STATUTE OF LIMITATIONS—OWNERS OF UNOCCUPIED LANDS.

The statute of limitations does not run against the owner of unoccupied lands until some one assumes to take adverse possession; and this rule applies as well to an assignee in bankruptcy, who, under the Revised Statutes, § 5057, must bring suit within two years as to the original owner.

5. JURISDICTION—HOLDER OF EQUITABLE TITLE.

Where complainants, holding the equitable title, bring their bill to compel a conveyance of the legal title by those who hold it in trust for them, the jurisdiction of a court of equity in nowise depends upon possession by complainants of the land.

This is a suit for decree for title for about 1,400 acres of land in Nodaway, Atchison, and Holt counties, Missouri. The bill sets out that Hugh B. Sweeny was on March 11, 1857, the owner of certain military bounty land-warrants; that on March 12 and 13, 1857, he located them on certain lands in controversy in this suit; all these lands were located by Sweeny in his own name; that on April 13 and August 3, 1857, Hugh B. Sweeny, for a valuable consideration, transferred these certificates of location to James S. Phelps; that the assignments of these certificates of location were duly acknowledged, and part of them recorded; that Phelps paid the taxes on this land. The bill sets out that the complainants furnished part of the money to Phelps to enter this land; Phelps furnished one-fourth, Bernard one-fourth, and Henry Young one-half; Young furnished $2,300, Bernard $1,027.70; all the lands were bought in the name of Phelps; all the certificates of location were assigned to him; that he paid taxes on this land until the year 1868, and Jones, his assignee, has paid taxes on these lands ever since; Phelps delivered all the title papers to Jones, his assignee in bankruptcy; that Sweeny represented

that these assigned certificates were equal to a warranty deed, and therefore Phelps took no steps to get patents in his own name. No attempt was made to record these certificates of location until the year 1861, four years after Phelps got them. The bill sets out that if the assigned certificates of location had been filed in Washington, patents would have been issued in the name of Phelps. The bill charges that the patents to these lands were issued to Sweeny shortly after the assignments were made, but these patents remained in the possession of the government of the United States until 1871 or 1872, when they were taken out. The bill sets out that until the delivery of the patents the legal title remained in the United States, and that complainants knew nothing of the patents being issued to Sweeny until 1879 or 1880. Sweeny died in the year 1869, and his heirs are parties to this suit. After the assignment Sweeny claimed no interest in this land, and his heirs claim none now. His heirs have been called upon to convey the legal title, but they refuse to do so. The bill charges that on the second of March, 1872, a deed dated March 22, 1864, signed by Hugh B. Sweeny and duly acknowledged, was filed for record in the office of the recorder of deeds in Nodaway county, Missouri, said deed embracing the lands in controversy in this suit. The bill charges that this deed was a forgery. This is a deed from Hugh B. Sweeny to John Sullivan, of New York. The bill then sets out that Sullivan made a power of attorney to one Richard F. Barrett. Barrett, as Sullivan's attorney, sold and conveyed part of these lands to Grant, Grant to Dubois, and the latter to Welton Grant; and the other lands to the other defendants by several separate deeds. The bill sets out all these deeds; when and where made, acknowledged, and recorded. They are all set out as pretended deeds, and they are charged to be frauds on the complainants; that all of the defendants had full notice and knowledge of the complainants' rights. All these deeds are set out as warranty deeds. The bill charges that Barrett, the attorney, had been engaged in frauds and fraudulent and nefarious contrivances in respect to lands in north Missouri, and in the counties of Nodaway, Atchison, and Cooper; that Barrett was a very suspicious character, and that he had been engaged for years in perpetrating similar frauds, and that his conduct always excited suspicion; that all these deeds were made by all the parties, and received with full notice and knowledge of complainants' rights, and with a view to cheat and defraud the complainants. The bill sets out that notwithstanding the certificates were assigned to Phelps, Sweeny had the legal title, and Phelps the equitable title in trust for

the complainants; Phelps went into bankrupcy in 1868; that in 1880 the complainants took possession of all the lands in Nodaway county. The bill prays for a decree for the legal title. These are the allegations of the bill. The answer of the defendants Grant and Dubois denies all title certificates of location and the land in the complainants; they deny all notice or knowledge of any such title; they deny that they have now or ever had any title; they admit all the deeds made to the several defendants, but they deny that these deeds were pretended deeds; they deny all forgery of any deed. The answer says that all these deeds were made in good faith, for valuable consideration, and without notice; that all the purchase money was paid without any notice of any title in complainants, or any of them. The answer denies all fraud, all collusion, forgery, and unlawful combination. This answer also sets up the statute of limitations of 10 years as a bar to this suit. The complainants filed a general replication. These are all the pleadings.

*Botsford, Williams & A. C. Widdecombe,* for complainant.

*L. H. Waters,* for Allen.

*Karnes & Ess,* for Grant.

*R. S. Musser, pro se* and for R. H. Musser.

McCRARY, C. J. 1. The court finds from the evidence that the deeds from Sweeny to Sullivan, from Sweeny to DeBow, and from DeBow to Bowen, mentioned in the bill, were not executed as they purport to have been by the respective grantors, but were forged, and upon the fact so found the court holds as matter of law that the purchasers from the grantees in said deeds acquired no title which a court of equity can protect. *Sampeyreac* v. *U. S.* 7 Pet. 222.

2. As to several of the tracts of land claimed by complainants, the point is made that they are not described in the certificates of location, which are the foundation of the action. The point is well taken and must be sustained. The complainants must make out their case by positive competent proof, and this is not done by showing that defendants have no title. A certificate of location, calling for land in section 20, does not entitle the holder to a decree for land in section 21; nor will a certificate, calling for the W. $\frac{1}{2}$ of a particular tract, support a claim for the E. $\frac{1}{2}$ of the same tract. There is no mistake apparent upon the face of the certificates, much less anything to show that some other and different tract was intended; and there is no allegation or mistake in the bill, and no prayer for relief on that ground, or by way of reformation of the instruments. There is nothing on the face of the papers to put a purchaser of property not de-

scribed therein on inquiry, and certainly nothing to indicate an intention to convey the tracts now claimed. *Scoles* v. *Wilsey*, 11 Iowa, 261.

3. As to all the lands correctly described in the certificates of location, the assignment of the certificates by the locator, Sweeny, to James S. Phelps vested in the latter all the right, title, and interest of the former, so that when the patents were subsequently issued in the name of Sweeny, he took in trust for the owners of the equitable title. A certificate of entry or location under a military land-warrant vests in the holder an equitable title to the land, and gives him a right to the patent when issued. If the holder of such a certificate conveys the land, or assigns the certificate, before the patent issues, and a patent is afterwards issued to him, he becomes, upon the plainest principles of equity, a trustee for the person to whom he had previously sold or assigned. By statute all warrants for military bounty land, and all valid certificates of the same, were made assignable, "so as to vest the assignee with all the rights of the original owner of the warrant or location." Rev. St. § 2414. Sweeny had made a location and entry of the land-warrants held by him, which vested the equitable title in him and entitled him to the patent. *Wirth* v. *Branson*, 98 U. S. 121. And under the statute, as well as upon general principles, the assignee of the certificates succeeded to all Sweeny's equities, and when the patents issued in Sweeny's name he took in trust for his assignee. *Landis* v. *Brant*, 10 How. 348; *Massey* v. *Papin*, 24 How. 362; *Moore* v. *Maxwell*, 18 Ark. 469; *Key* v. *Jennings*, 66 Mo. 366.

4. The equitable title is in complainants and Stephen E. Jones, assignee in bankruptcy of James S. Phelps. The proof shows that the land was purchased and paid for by complainants and said Phelps, and the interests of the several parties, as established by decree of the United States district court for the district of Kentucky in the year 1872, (which, as between the parties, must be taken as final,) is as follows: The heirs of Young are entitled to one-half, S. M. Bernard to one-fourth, and Stephen E. Jones, assignee, to one-fourth. The parties are therefore entitled to recover in these proportions, unless the respondents have succeeded in establishing a good defense.

5. It is insisted that the complainants are barred by the statute of limitations or by laches, and that the respondent Stephen E. Jones, assignee, is barred by the two-years' limitation provided by section 5057 of the Revised Statutes of the United States. Some of the patents were

issued to Sweeny in 1859, and others in 1866. But the owner of unoccupied lands is under no obligation to bring suit to quiet his title until some one assumes to take adverse possession. Until then, the owner may rely upon his title, whether it be legal or equitable, and the statute of limitations does not run against him. The bar depends entirely upon adverse possession. *Elmendorf* v. *Taylor*, 10 Wheat. 168; *Pindell* v. *Mulliken*, 1 Black, 585. This suit was commenced in June, 1880. The court finds from the evidence that none of the respondents had, for 10 years prior to that date, held possession of the lands in controversy, or any of them, adversely to the complainants. It follows that the defense of the statute of limitations and of laches is bad as to complainants. This, however, does not determine the question of the right of Stephen E. Jones, as assignee in bankruptcy, to recover the one-fourth interest of Phelps; and this brings us to the question—

6. Whether said assignee is barred by the provisions of said section 5057 of the Revised Statutes which bars a recovery by an assignee in bankruptcy unless suit be brought "within two years from the time when the cause of action accrued." The same rule prevails under this statute as under the general statute of limitations,—the cause of action is deemed to have accrued when the hostile claim is asserted by adverse possession. *Banks* v. *Ogden*, 2 Wall. 57. It is admitted that the lands claimed by defendant Allen in Holt county were held by him adversely for more than two years prior to the commencement of this suit. As to those lands, therefore, the right of action of the assignee is clearly barred. As to the lands claimed by defendant Musser there was clearly no adverse possession prior to July, 1879, which was less than two years prior to the commencement of this suit. There is no evidence of adverse possession of the lands claimed by the other defendants, and it follows that, as to all the lands except those claimed by defendant Allen, the defense of the two-years' statute of limitation fails.

7. It is insisted that the bill should be dismissed for the reason that the complainants cannot maintain this action unless they are in the lawful and peaceful possession of the land sought to be recovered. The doctrine here sought to be invoked has no application to the case. The complainants, holding the equitable title, bring their bill to compel a conveyance of the legal title by those who hold it in trust for them. In such a case the jurisdiction in no wise depends upon possession. *Branch* v. *Mitchell*, 24 Ark. 431; *Smith* v. *Orton*, 21 How. 241.

The result is that there must be a decree in favor of complainants and respondent Stephen E. Jones, assignee, for the interest claimed by them respectively in all the lands in controversy in this case, except (1) those not described in the certificates of location; and (2) those adversely held by respondent Allen, situated in Holt county, as to which the right of action of said assignee is barred. The costs will be apportioned so that the respondents who claim lands not recovered by complainants shall pay no costs, and shall recover their costs. Decree accordingly.

KREKEL, D. J., concurs.