## WIDDICOMBE *v.* CHILDERS.

ERROR TO THE SUPREME COURT OF THE STATE OF MISSOURI.

Argued December 1, 1887. — Decided January 23, 1888.

A applied at a public land office for a S.E. ¼ section of land. By mistake the register in the application described it as the S.W. ¼, and A signed the application so written, but the entry in the plat and tract books showed that he had bought and paid for the S.E. ¼. He immediately went into

possession of the S.E., ¼, and he and those under him remained in undisputed possession of. it for more than 35 years. About 22 years after his entry some person without authority of law changed the entry on the plat and tract books, and made it to show that his purchase was of the S.W. ¼ instead of the S.E. ¼, thus showing two entries of the S.W. ¼. W., then, with full knowledge of all these facts, located agricultural scrip on this S.E. ¼. S., or those claiming under him, did not discover the mistake until after W. had got his patent. *Held*, that W. was a purchaser in bad faith, and that his legal title, though good as against the United States, was subject to the superior equities of S. and of those claiming under him.

THE case is stated in the opinion of the court.

*Mr. S. S. Burdett* for plaintiff in error.

*Mr. James Hagerman* for defendants in error submitted on his brief.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

This was a suit brought by Albert C. Widdicombe to recover the possession of the S.E. ¼ sec. 36, T. 64, R. 6, Clarke County, Missouri. He claimed title under a patent of the United States bearing date December 15, 1871, issued upon a location of agricultural scrip on the 10th of May, 1871, under the act of July 2, 1862. 12 Stat. 503, c. 130. As an equitable defence to the action, such a defence being permissible by the laws of Missouri, the defendants alleged in substance that they claimed title under Edward Jenner Smith, who, on the 6th of July, 1836, went to the proper land office and made application for the purchase of the land in dispute; that his application was duly accepted, and he completed the purchase by the payment of the purchase money as required by law; that the entries made at the time by the proper officers in the plat and tract books kept in the office showed that he had bought and paid for the S.E. ¼, but that the register, in writing his application, described the S.W. ¼ by mistake; that he signed the application without discovering the error; that he immediately went into the possession of the S.E. ¼, as and for

the lands he had purchased, and he and those claiming under him have asserted title thereto, and paid taxes thereon ever since; that afterwards the entries on the plat and tract books were changed, without authority of law, so as to show that his purchase had been of the S.W. ¼ instead of the S.E. ¼; that Widdicombe located his scrip on the S.E. ¼ with full knowledge of all the facts, and that he now holds the legal title under his patent in trust for those claiming under Smith, whom the defendants represent in the suit. The prayer of the answer was that such trust might be established, and Widdicombe decreed to convey the legal title to those who had acquired Smith's rights.

The trial court found the facts to be substantially as stated in the answer. The Supreme Court, on appeal, affirmed this finding, and rendered judgment in favor of the defendants, requiring Widdicombe to convey in accordance with the prayer of the answer. From that judgment this writ of error was brought.

We entertain no doubt whatever as to the correctness of the findings of fact in the courts below. The evidence establishes beyond all question that Smith intended to buy, and the officers at the land office intended to sell the S.E. ¼. That tract was then unsold, while the S.W. ¼ had been purchased by Robert Wooden at private entry on the 8th of November, 1834, and this was shown by the records of the office. The written application, by mistake, described the wrong land, and the certificates of the register and receiver followed the application; but the entries upon the records of the office were correct. The officers supposed they had sold, and Smith supposed he had paid for, the S.E. ¼. This was in 1836. For twenty-two years afterwards, certainly, and, as we are satisfied, for a much longer time, the plat and tract books showed that this quarter section was not subject to entry or sale. At some time, but exactly when or by whom does not distinctly appear, the entry of Smith was changed from the S.E. ¼ to the S.W. ¼, thus showing two entries of the S.W. ¼ — one by Wooden in 1834, and the other by Smith in 1836. The fact of the change, as well as what it was, appeared on the face of

the records, and no one could have been misled by it unless he wilfully shut his eyes to what was before him.

Widdicombe was sworn as a witness in his own behalf, and the following is the whole of his testimony:

"I am plaintiff in this cause. I applied for and entered the land in controversy at the Boonville land office, as shown by my application in evidence, in the early part of 1871. Never was in Clarke County, Mo., or the northeastern part of the State prior to June, 1874. Never saw the Hampton map of Clarke County, referred to in evidence, prior to that time. Never saw any records, other than the government or United States records, having reference to the land in controversy prior to that time. I had heard of no person claiming the land in controversy prior to the time I went to Clarke County, in 1874. The defendant, Childers, was cutting timber upon the land when I went there, in June, 1874, and was cutting about the middle of the tract; so he informed me.

"Cross-examined by defendants:

"I discovered the southeast quarter 36, 64, 6 W., was vacant while employed in making an examination of the records to purchase for a party in Scotland County an 80-acre tract, where there were three applicants at the same time for the same piece of land, one of whom was the sheriff of Scotland County. There had been a correction, alteration, or erasure, call it as you please, on the plat and tract books in the register's office, in section 36, township 64, range 6 west, and I saw it before I made the entry. [On] The plat book, whereon the numbers of entries are posted, in section 36, and on the southeast quarter of said section, there is a perceptible erasure. On the tract book the letter 'W,' in the Smith entry, appears to have been made with a heavy stroke of the pen, and has a much heavier and darker appearance than the letter 'S' preceding it, and has the appearance of having been changed from some other letter, and the letter 'E' is the only letter over which the letter 'W' could have been written so as to have formed a correct description of any other entry, either in that or any other section, or in the description of lands similarly situated."

The evidence shows clearly and distinctly that Widdicombe

had been for many years familiar with the books of the office and their contents, as well as with the way in which the business was done there. He must have known that the original entry by Smith was of the S.E. ¼, and that it could not be changed to the S.W. ¼ without putting the entry on a quarter section that had already been bought and paid for. Under these circumstances the conclusion is irresistible that he is legally chargeable with notice of Smith's prior entry and of the rights which had been acquired under it.

Such being the case the judgment below was clearly right. There cannot be a doubt but that if the mistake in the written application and in the certificates of the register and receiver had been discovered before the patent was issued to Widdicombe, it would have been corrected in the land office upon proper application in that behalf. The error was one which arose from the mistake of the register, one of the officers of the local land office, and comes directly within the provisions of § 2369 of the Revised Statutes, which is a reenactment of the act of March 3, 1819, 3 Stat. 526, c. 98, and in force from the time of the entry by Smith until now. The act of 1819 was extended by the act of May 24, 1828, 4 Stat. 301, c. 96, to cases where patents had been or should be issued. This extension is now embraced in § 2370 of the Revised Statutes. Another statute, passed May 24, 1824, 4 Stat. 31, c. 138, now § 2372 of the Revised Statutes, authorizes similar relief.

The mistake in this case does not appear to have been discovered by Smith, or those claiming under him, until after Widdicombe had got his patent, and after they had been in the undisputed enjoyment for thirty-five years and more of what they supposed was their own property under a completed purchase, with the price fully paid. Widdicombe, being a purchaser with full knowledge of their rights, was in law a purchaser in bad faith, and, as their equities were superior to his, they were enforceable against him, even though he had secured a patent vesting the legal title in himself. Under such circumstances, a court of chancery can charge him as trustee and compel a conveyance which shall convert the superior equity into a paramount legal title. The cases to this effect

are many and uniform. The holder of a legal title in bad faith must always yield to a superior equity. As against the United States his title may be good, but not as against one who had acquired a prior right from the United States in force when his purchase was made under which his patent issued. The patent vested him with the legal title, but it did not determine the equitable relations between him and third persons. *Townsend* v. *Greeley*, 5 Wall. 326, 335; *Silver* v. *Ladd*, 7 Wall. 219, 228; *Meader* v. *Norton*, 11 Wall. 442, 458; *Johnson* v. *Towsley*, 13 Wall. 72, 87; *Carpentier* v. *Montgomery*, 13 Wall. 480, 496; *Shepley* v. *Cowan*, 91 U. S. 330, 340; *Moore* v. *Robbins*, 96 U. S. 530, 535; *Worth* v. *Branson*, 98 U. S. 118, 121; *Marquez* v. *Frisbie*, 101 U. S. 473, 475.

*The judgment is affirmed.*