DETERMINED BY

# THE SUPREME COURT

OF THE

# STATE OF WYOMING

[APRIL TERM, 1925]

BENTLEY ET AL v. JENNE*
(No. 1174; May 19, 1925; 236 Pac. 509)

PUBLIC LANDS—EQUITABLE OWNERSHIP UNDER PATENT-PLEADING—
EJECTMENT—BURDEN ON DEFENDANT TO SHOW BETTER TITLE—GOV-
ERNMENT RESURVEY CANNOT DISTURB TITLE—EVIDENCE.

1. Plaintiff, who pre-empted and obtained patents from United
   States government on lands purchased from another, but
   whose fences did not quite correspond to governmental
   descriptions, upon which parties had supposedly filed, was
   equitable owner thereof, where he and his predecessors in
   interest had occupied and cultivated lands for 25 years,
   and had put extensive improvements thereon and be-
   lieved that they had obtained patents therefor, and it was
   widely known that plaintiff was owner or claimant there-
   of.

2. Generally prayer for relief forms no part of statement of
   cause of action and is generally unimportant.

3. In suit in nature of an action for recovery of real property,
   plaintiff's evidence *held* to show clear legal title to lands
   sued for.

4. Where up to time that possession was taken from plaintiff
   he had at least a title by possession, and had occupied
   land in good faith for nearly 25 years, believing on good
   grounds that he had a patent thereto, his title was suffi-
   cient to base an action in ejectment.

5. In suit in nature of an action for recovery of real prop-
   erty, burden of proof was on defendant, who entered into
   possession surreptitiously after plaintiff for many years
   had *held* unquestioned possession, to show a better title to
   land in controversy than that of plaintiff.

6. In suit in nature of an action for recovery of real property
   defendant *held* not to have sustained burden of showing a
   better title to land claimed than that of plaintiffs.

7. A government resurvey cannot disturb title, which parties
   have acquired up to time that it is made.

8. In suit in nature of an action for recovery of real property,
   admission of evidence, as to a resurvey of lands claimed,
   *held* harmless, where plaintiff did not claim any rights
   under any new survey, and only purpose of its introduc-
   tion was to settle all future questions as to actual location
   and description of plaintiff's land, and to locate and
   describe it in accordance with new survey.

*NOTE—See Headnotes—(1) 32 Cyc. p. 1058; (2) 31 Cyc. pp.
110, 111; (3) 19 C. J. p. 1180; (4) 19 C. J. pp. 1047; 1186; (5) 19 C.
J. p. 1155; (6) 19 C. J. p. 1155; (7) 32 Cyc. p. 805; (8) 4 C. J. p.
869.

APPEAL from District Court, Campbell County; JAMES
H. BURGESS, Judge.

Suit by John J. Bentley, as administrator of the estate
of Gilbert De Saumarez Hamilton, deceased and another,
against Lew Jenne. There was judgment for plaintiff, and
defendant appeals.

*Diefenderfer & Wakeman* for appellant.

This is an action of ejectment, 19 C. J. 1028-1033. It is
not one of forcible entry and detainer; no element of equity
is involved; by supplemental petition, plaintiffs claim under
a resurvey; this cannot be done; Lessee v. Spencer, 16 L. ed.
97; Shepley v. Cowan, 23 L. ed. 424; Stark v. Starr, 18 L.
ed. 925; since patent issued under original survey; Barrin-
ger v. Davis, 120 N. W. 69; Cragin v. Powell, 32 L. ed. 566.
Original corners, if found, are conclusive whether correctly
located or not, 9 C. J. 164. A resurvey merely traces orig-
inal lines; Bayhouse v. Urquides, 105 Pac. 1066; Steel v.
Co., 106 U. S. 447; Weaver v. Howatt, 152 Pac. 928; Trot-

ter v. Stayton, (Ore.) 68 Pac. 3. Plaintiffs must be held to their original petition, 32 Cyc. 805; Burt v. Busch, 46 N. W. 790. Plaintiff must prove title as alleged, 19 C. J. 1151. In ejectment involving boundary dispute burden is on plaintiff to show defendants occupancy extending over real lines; Harper v. Anderson, 43 S. E. 58. Equities cannot be inquired into as only legal rights are involved, 15 C. J. 1032; Rome v. Beckett, 30 Ind. 154; Powell v. Pierce, 134 N. W. 447. Descriptions in patent controls, Gazzam v. Phillips, 15 L. ed. 958; Mathews v. Nefsy, (Wyo.) 81 Pac. 306. Plaintiff must prove identity of land as to its inclusions and boundaries, 19 C. J. 1153. A trespasser upon public lands cannot prevent homestead entry; Whittaker v. Pendola, 20 Pac. 680, 32 Cyc. 811. Homestead entry initiates adverse possession, 87 A. S. R. 342; survey cannot be collaterally attacked, 100 C. C. A. 105. Occupation confers no rights against the government, 32 Cyc. 819; 19 C. J. 1050; Burgess v. Gray, 16 How. 48. Court cannot correct erroneous location of corners; Goroski v. Tawney, 141 N. W. 102; Murphy v. Tanner, 100 C. C. A. 131. No resurvey may impair bona fide rights, 5 U. S. C. S. 5842. In ejectment legal title prevails, Anderson v. Rasmussen, 5 Wyo. 44; equity alone cannot relieve against erroneous deed; Prentice v. Stearns, 28 L. ed. 1059. A judgment without the issues is void; Metcalf v. Hart, 3 Wyo. 513; Newcastle v. Smith, (Wyo.) 205 Pac. 302.

*Metz, Sackett & Metz* for respondents.

The Code has abolished distinctions between actions at law and suits in equity, 5555 C. S.; all fictions are abolished, 5647 C. S. The action is for possession and damage; defendants occupancy was a mere trespass conferring no rights; Sparks v. Mount, (Wyo.) 207 Pac. 1099. A homestead entry cannot be initiated upon lands in the possession of another claiming it in good faith, 4674-76 C. S. Gauthier v. Morrison, 232 U. S. 452; Lyle v. Patterson, 228 U. S. 211; Denee v. Ankeny, 256 U. S. 208; Atherton v. Fowler,

96 U. S. 516; Hosmer v. Wallace, 97 U. S. 579; defendants general denial admits his possession; Iba v. Assn., 5 Wyo. 355; Anderson v. Rasmussen, 5 Wyo. 44. A resurvey must follow original boundaries and monuments, 32 Cyc. 805; the Court's decision is in accordance with departmental findings and rulings.

*Diefenderfer & Wakeman* in reply.

Respondents in their brief, attempt to show that the petition states two causes of action, one legal and one equitable, which must stand in the absence of a motion to separately state and number; no equitable cause of action is pleaded, merely an ejectment action. Under 6236-6237 C. S. plaintiffs are not entitled to equitable relief; Allen v. Houn, (Wyo.) 219 Pac. 573. The procedure in cases of disputed boundaries is prescribed by statutes, 1546 C. S. The Fox survey was an attempt to locate a description of land that did not exist.

BLUME, Justice.

This suit is in the nature of an action for the recovery of real property, brought originally by Gilbert DeSaumarez Hamilton, as plaintiff, against Lew Jenne, as defendant. During the pendency of the case in the court below, Hamilton died, and John J. Bentley, administrator of his estate and Catherine Esdaile, his only heir at law, were substituted as plaintiffs. Judgment was rendered in favor of said plaintiffs and against the defendant, from which said defendant, appellant herein, has appealed.

The facts, somewhat abbreviated, are substantially as follows: About 1881 Drew Smith and Tom Smith settled upon 320 acres of land, hereinafter described, and constructed cabins, put up some pole fences and made other improvements thereon. They were the first settlers in that vicinity. They sold their possessory right and improvements to said Hamilton and one Malcolm Moncrieffe about 1885, and these two purchasers preempted said land and obtained patents from the United States Government. The patent to Hamil-

ton is dated November 16, 1891, for the E½ of the NW¼ and S½ of the NE¼ of Section 22, Township 57 North of Range 74 West of the 6th P. M., containing 160 acres. The patent to Malcolm Moncreiffe is dated the same day and is for the NE¼ of the SE¼ of Section 22, and W½ of the SW¼ and the SE¼ of the SW¼ of Section 23, Township 57 North of Range 74 West of the 6th P. M., containing 160 acres. Moncreiffe sold said land to said Hamilton by deed executed on October 19, 1897. Prior to the time that Hamilton and Moncreiffe filed upon said land, a survey thereof was made, the starting point of which was an apparently well known government monument about eight miles east of said land on the 9th Guide Meridian, which meridian runs between Ranges 72 and 73 North, and the survey so made corresponded with a previous survey that had theretofore been made by the Smith brothers. Hamilton and Moncreiffe erected corrals, sheds and dwelling houses upon said land and made other improvements thereon worth from $2,000 to $4,000. The lands upon which the improvements aforesaid were made are located along what is called Bitter Creek, and were enclosed by a fence, which, however, did not quite correspond to the governmental descriptions upon which the parties had supposedly filed. On the westerly side, the fence enclosed also other land, while on the easterly side some of the land supposedly filed on was not enclosed by the fence. This latter fact is, however, immaterial, for the reason that the appellant Jenne claims no lands lying outside of such fence on the east. Moncreiffe and Hamilton resided upon and cultivated their respective tracts of land until Moncreiffe sold out to Hamilton in 1897. After that time Hamilton resided upon, cultivated and claimed all of said 320 acres of land. During part of that time he resided near Sheridan, Wyoming, but was in possession of said property through men working for and under him. During 1912 and part of 1913 he was in England and upon his return found that Lew Jenne, the appellant in

this case, had, about September 23, 1913, gone into possession of a large portion of his property, including most of his buildings, appellant claiming the property under a patent issued on August 27, 1913, to one Grover C. Swartz, for the W½ of the NW¼; SE¼ of the NW¼ and the NE¼ of the SW¼ of Section 23, Township 57 North, Range 74 West of the 6th P. M., containing 160 acres. Swartz conveyed this land on September 22, 1913 to William Coffman and Lew Jenne, and William Coffman in turn conveyed his undivided one-half interest to Lew Jenne on September 23, 1913. The theory of appellant is that Hamilton's land is not located where the latter thought it was, but that the patent issued to Grover C. Swartz covers, by actual location upon the ground, the land of which appellant took possession. This claim is based upon a survey made in 1908 by one Charles P. Berry, according to which Hamilton's land is about one-half mile west, and about the same distance south of where it had been supposed to be. It seems that one Beason, when it was thought that a mistake had been discovered, filed on part of the land theretofore occupied and claimed by Hamilton, but such filing was subsequently cancelled. Appellant claims that about the same time Hamilton gave his consent that Grover C. Swartz might make a homestead filing, for which the patent to him was subsequently issued, in order to cover most of Hamilton's land not covered by the Beason filing. While there is testimony in the record tending to show such consent, Hamilton denied it, and the court evidently believed the latter. Swartz was at that time in the employ of Hamilton and continued in such employ until shortly before he received his patent above mentioned. He resided upon the land now claimed by appellant, as Hamilton's employee, did not cultivate the land and made no improvements upon it except only what he was asked to do as such employee, and at Hamilton's expense. The trial court found that Hamilton's possession of said land was a well known fact; that appellant took possession of 173 acres of Hamilton's

land, including the dwelling house, sheds, corrals, meadows, irrigation system, fencing, artesian well, pump, tank and other improvements thereon during the absence of Hamilton and without the consent or permission of said Hamilton, and that he then knew and had known for many years that said property was claimed by Hamilton. These findings are sustained by ample evidence and must be accepted as true. Subsequent to the commencement of the action herein, a resurvey of the township in question was made by the authority of the government of the United States and the township was platted into a number of lots. The trial court found, which, according to the maps in the record, seems to be true, that the lands patented to Moncrieffe and Hamilton are now embraced in what are called lots 48 and 49, according to the new survey, and the decree of the trial court describes the land of which the respondents were given possession, according to the new description rather than the description mentioned in the patents.

1. There is not the slightest equity, so far as we can discover, in favor of appellant's claim. Hamilton and his predecessors in interest had occupied and cultivated the lands in question for a quarter of a century and had put extensive improvements thereon. They believed in good faith, and reasonably so, that they obtained patents for these identical lands. The place was known far and wide as "T. J. Meadows" for many years, and that Hamilton was the owner or claimant thereof. Appellant, too, knew these facts. It would be a reflection on Anglo-Saxon jurisprudence if no remedy existed against the trespass committed on Hamilton's rights under the circumstances shown in this case, and to permit him to be deprived of his property by stealthy possession taken thereof during his absence. In Hedrick v. R. Co., 167 U. S. 673, 17 Sup. Ct. 922, 42 L. Ed. 320, it was held that the locator of a land warrant on a tract of public land who does all that is required to entitle him to a patent, becomes the equitable owner of the land, though by mistake it is incorrectly described in his

application: and when he and his grantees take possession of, improve, and pay taxes on the land, another who procures a patent therefor from the government, with knowledge of such facts, is a purchaser in bad faith, and may be compelled to convey the legal title to the holder of the superior equity. In Widdicombe v. Childers, 124 U. S. 400, 8 Sup. Ct. 517, 31 L. Ed. 427, the filing too had been incorrectly described as the SW¼ instead of the SE¼, and the court said:

"The mistake in this case does not appear to have been discovered by Smith, or those claiming under him, until after Widdicombe had got his patent, and after they had been in the undisputed possession, for thirty-five years and more, of what they supposed was their own property under a completed purchase, with the price fully paid. Widdicombe, being a purchaser with full knowledge of their rights, was in law a purchaser in bad faith; and, as their equities were superior to his, they were enforceable against him, even though he had secured a patent vesting the legal title in himself. Under such circumstances a court of chancery can charge him as trustee, and compel a conveyance which shall convert the superior equity into a paramount legal title. The holder of a legal title in bad faith must always yield to a superior equity. As against the United States his title may be good, but not as against one who had acquired a prior right from the United States in force when his purchase was made under which his patent issued. The patent vested him with the legal title, but it did not determine the equitable relations between him and third persons. Townsend v. Greely, 5 Wall. 326, 18 L. Ed. 547; Johnson v. Townley, 13 Wall. 72, 20 L. Ed. 485; Worth v. Branson, 98 U. S. 118, 25 L. Ed. 86; Marquez v. Frisbie, 101 U. S. 473; 25 L. Ed. 800."

In Wirth v. Branson, 98 U. S. 118, 25 L. Ed. 86, the court said:

"The rule is well settled, by a long course of decisions, that when public lands have been surveyed and placed in the market, or otherwise opened to private acquisition, a person who complies with all the requisites necessary to entitle him to a patent in a particular lot or tract is to be regarded as the equitable owner thereof, and the land is no longer open to location. The public faith has become pledged to him, and any subsequent grant of the same land to another party is void, unless the first location of entry be vacated and set aside."

In the case of Reagan v. Boyd, 59 Mont. 453, 197 Pac. 832, the court said:

"It is the rule adhered to uniformly that whenever one person has wrongfully received patent to lands, which in equity and good conscience should have been granted to another, the patentee, and those holding under him with knowledge of the facts, will be converted into trustees of the legal title for the use and benefit of the equitable owner, and that a court of equity will, in a proper case, decree that appropriate transfer be made."

See also Snider v. Ostrander, 26 Colo. App. 468, 145 Pac. 283; Mason v. Braught, 33 S. D. 559, 146 N. W. 687.

The appellant, however, contends, that this is not an equitable action, and that no rules of equity can be applied in this case. It is true, as we heretofore stated, that this is a suit in the nature of an action to recover real property. The petition, however, pleads the facts herein in detail, and it is probable that the pleadings would have warranted the granting of equitable relief by the trial court unless prevented by reason of the limited prayer which is as follows:

"Wherefore plaintiff prays judgment against the defendant for the delivery of the possession of the said property and for the sum of $4,000 and the costs of this action."

It is a general rule that the prayer for relief forms no part of the statement of the cause of action and is generally unimportant. It has even been held that relief may be granted different from that contained in the prayer, if justified by the allegations. Myler v. Insurance Co., 64 Okla. 293, 167 Pac. 601; Anderson v. Muhr, 36 Okla. 184, 128 Pac. 296; Rochester v. Wells-Fargo & Co., 87 Kan. 164, 123 Pac. 729, 40 L. R. A. N. S. 1095; Smith v. Rowe, 49 App. Div. 582, 64 N. Y. Sup. 389. See also Fidelity & Guaranty Co. v. Nash, 20 Wyo. 65, 83, 121 Pac. 541, 124 P. 269, 31 Cyc. 110, 21 R. C. L. 489. It must be observed, however, that the statutes in some of the states make no specific provision as to the prayer, while section 5649, W. C. S. 1920, provides that the petition must contain a demand of the relief to which a party supposes himself to be entitled. See Donovan v. Mac Dewitt, 36 Mont. 61, 92 Pac. 49, Jurden v. Massey (Tex.), 134 S. W. 804; Bowman v. Ray, 118 Ky. 110, 80 S. W. 516; Hoffman v. Construction Co., (37 Cal. App. 125), 173 Pac. 776. We need not determine whether the respondents might have been granted equitable relief herein, in view of the fact that the respondents in this case have, we think, shown a clear, legal right to recovery, but we might state that it is hard for us to see, if the case were sent back for a new trial, how the ultimate outcome could be changed.

2. It seems that two surveys of the land in question were made after the commencement of this action—one by W. T. Roberts, and one by T. L. Fox. These surveys differ from each other, and each differs from the Berry survey. The point of beginning of the latter was, as Berry testified, from a government corner in the northwest corner in Section 17, Township 56, Range 73, being in the township south of the land in question, and Berry testified that he found a pile of rocks, not marked, which he took to be the southeast corner of Township 57, Range 74. The Roberts survey was made from what was supposed to be a

government corner at the southeast corner of Section 31 in Township 57, Range 73. The Fox survey was made from an unquestioned government corner on the 9th Guide Meridian and 14th Standard Parallel, being the southwest corner of Township 57, Range 72, which is the same as the southeast corner of Township 57, Range 73, and located about eight miles distant from the land in question. The 14th Standard Parallel runs along the south line of the Townships numbered 57. Fox also had located several other government corners directly north of that just mentioned. He testified that he had the field notes of the United States Government as to the description of the corners along this parallel up to the southeast corner of Township 57, Range 74. He did not, however, have field notes for either the township just mentioned or the one lying east thereof. The testimony, however, in the record seems to indicate that these field notes were of no or little value. According to the survey so made by Fox, there was no mistake in the location of the Hamilton land, and according to his testimony the description in the patents to the land corresponds with the location upon the ground. An old fence post located at the southeast corner of Hamilton's land corresponds, substantially, as he testified, with the southeast corner of Hamilton's land as located by Fox. No corners were found anywhere in Township 57, Range 74 or in the township east thereof, except, as already mentioned, along the 9th Guide Meridian. Fox testified that neither the corner accepted by Berry as the southeast corner of Township 57, Range 74, nor the corner accepted by Roberts as the southeast corner of Section 31, Township 57, Range 73, were true government corners, and that under the circumstances the only government corner properly taken as a point of commencement, was the corner of the 9th Guide Meridian and 14th Standard Parallel hereinbefore mentioned. The trial court evidently believed the testimony of Fox, and no good reason has been pointed out, why it should not have done so. We think such find-

ing is supported by substantial testimony, and respondents accordingly showed a clear and legal title to the land sued for.

3.    It is, however, not very important in this case whether the Fox survey is accepted as correct or not, because the testimony clearly shows a possessory title in Hamilton. We cannot agree with counsel for appellant, that Jenne rightly entered into possession of Hamilton's land. He derived his rights through Swartz. With knowledge of all the facts, Swartz filed in 1908 upon 160 acres of land. He supposed that he was filing upon land which was in the possession of Hamilton. From 1908 to 1912 Swartz was, as already stated, in the employ of Hamilton. He resided upon the land in question as such employee. He made no improvements upon such land and expended no money in connection therewith, and it can hardly be claimed that he acquired title to the land in question or to any land covered by his homestead, in good faith. Jenne, because of his knowledge of the facts, stands in no better shoes than Swartz, and when he entered upon the land in 1913 in the absence of Hamilton and took possession of the home and premises of the latter, he did so surreptitiously, which cannot serve as a basis for a possessory title in him. We think it clear that up to the time that possession was so taken from Hamilton, the latter had at least a title by possession. He had occupied the land in good faith for nearly a quarter of a century, believing, upon good grounds, that he had a patent to the land. This title was sufficient as a basis to bring an action in ejectment. 19 C. J. 1047, and the numerous cases there cited. That rule was stated in Allen v. Houn, 30 Wyo. 186, 214, 219 Pac. 573, 583, where the court cited from Newell on Ejectment, page 433, as follows:

"Possession of land is prima facie evidence of title and is sufficient evidence of title as against all persons, but one who can show either a prior possession or a better title

\*   \*   \*   and as against a subsequent intruder without right, such prior possession is sufficient evidence of title.''

Hence it is clear that the title of Hamilton was good against all the world, including Jenne, unless the latter could show that he had a better title. Borgeson v. Tubb, 54 Mont. 557, 172 Pac. 326. The burden of proof to show such better title was upon Jenne. He has not met that burden, since the court was fully justified in finding that the Berry survey, according to which the Swartz filing was made, was not correct. It is true, that some of the land claimed by Hamilton was not included within his fences, and the record fails to show in what manner he occupied it, but, as heretofore stated, that part of the land has never been claimed by Jenne, and hence need not be considered herein.

4.   We have already mentioned the fact that subsequent to the commencement of this action, a new survey was made by the government of the United States, whereby Township 57, Range 74, was divided into lots. This survey does not appear to have been made from any known government corner and is called by one of the witnesses ''an independent survey''—that is to say a survey not dependent upon any known government corner. Respondents filed a supplemental petition setting forth the making of this survey. A demurrer was filed to such supplemental petition and overruled. Upon the trial of the case all evidence in connection with this resurvey was objected to, but the objections were overruled. Counsel for appellant have devoted a great deal of their argument to this subject, but we fail to see the importance thereof. We concede that a resurvey cannot disturb the title which parties have acquired up to the time that it is made. We do not, however, understand that respondents claim any rights under any new survey. The only purpose, apparently, of introducing any evidence in regard thereto, was to settle

all future questions as to the actual location and description of the Hamilton land, and to locate and describe it in accordance with the new survey. It would seem that the description of the land according to the new survey, simply gives the land as described in the patent a new name; instead of calling it ''X'', it is now called ''Y''. We can see no possible harm in doing so.

It follows from what we have said that the judgment of the district court should be affirmed and it is so ordered.

POTTER, C. J., and KIMBALL, J., concur.