STATE v. VANDERKOPPEL, ET AL.
(No. 1780; March 13, 1933; 19 Pac. (2d) 955)

For the appellant, the cause was submitted upon the brief of *J. A. Greenwood,* Attorney General; *Richard J. Jackson,* Deputy Attorney General; *George W. Ferguson,* Assistant Attorney General; *R. Dwight Wallace,* Assistant Attorney General, all of Cheyenne, Wyoming.

The cause was submitted for the respondents upon the brief of *Thomas A. Nicholas*, of Gillette, Wyoming.

BLUME, Justice.

This is an action to recover the ownership and possession of a strip approximately 191 feet wide, east and west, and 1320 feet long, north and south. The plaintiff claims that this property is in fact a part of the Southeast Quar-

ter of the Northeast Quarter of Section 25, T. 50, R. 72, which land along with other land it acquired in 1919 as an experimental farm. The defendants claim that the strip above mentioned is in fact a part of the Southwest Quarter of the Northwest Quarter, otherwise known as Lot 2, of Section 30, T. 50, R. 71. Lot 2, aforesaid, joins the Southeast Quarter of the Northeast Quarter of Section 25 on the east, and the strip in dispute, accordingly, is a strip of land which divides ranges 71 and 72, the plaintiff claiming that it belongs to range 72 on the west, while defendants claim that it belongs to range 71 on the east. In other words, the boundary between these ranges is disputed. The trial court found in favor of the defendants, and the state has appealed.

The land owned by the state was settled upon as a homestead by John F. Cates about 1907. He received patent for the land on February 4, 1915. He sold the land to his father, John R. Cates, in April, 1916, who in turn sold it to the state by conveyance made November 10, 1919. The land owned by defendants was settled upon as a homestead by Claude F. Weese, a cousin of John F. Cates, who received a patent for it on April 14, 1917. By subsequent conveyances the ownership thereof was vested in the defendant Hitt, who, in turn, sold it under contract to the defendant Vanderkoppel.

John F. Cates, about 1907, constructed a fence on the east of his land, which appears to have been on a line west of that now claimed by the state to be the true line. The boundaries of the land were unknown. Cates employed no surveyor, and he testified in substance that the fence was built as a fence of convenience, not intended to represent the line to which he made absolute claim, and that he would have changed the fence to the true line, if and when it should become known. The testimony of John R. Cates is similar. Nor did Claude F. Weese have the land surveyed, and he too considered the fence of Cates merely

a fence of convenience. In fact the whole neighborhood was uncertain as to the true line between ranges 71 and 72, and was hoping that this line might at some time be ascertained and settled by some definite authority. It seems, according to the testimony of Mr. Spaeth, who owned the south half of the Northeast Quarter of Section 25, T. 50, R. 72, and occupied Section 36 of the same township, that John F. Cates merely "hooked" on to the fence which he had constructed along the east line of his land. Spaeth had found the southeast corner of this township, but not the northeast corner of Section 36 thereof, and he stated that he did not pretend to build his fence according to the true line, but that it was merely a fence of convenience, although he thought that he put it somewhat west of the true line. When the state was about to purchase its land in Section 25, supra, in 1919, it employed a surveyor by the name of J. H. Harvey, who was not a witness in the case, and who, at the time, was county surveyor of Campbell County. He was employed to survey the land proposed to be bought, and was assisted therein by W. L. Quayle, a representative of the state. In making the survey the defendants, then in possession of the lands which they now own, were not notified of the intended survey. The state claims according to the line established by this survey, and which, according to the testimony of Mr. Quayle, is substantially that occupied by the fence constructed by Cates in 1907. Mr. Quayle testified that Harvey found a rock on the half section line on the western boundary of Section 25, supra; that he then surveyed east and found a corner on the range line between ranges 71 and 72, being the southeast corner of the Northeast Quarter of Section 25, T. 50, R. 72, and the southwest corner of Lot 2 above mentioned. But the witness did not examine the corners and was unable to state that they were true U. S. Government corners.

According to the testimony of Jesse E. Spielman, county surveyor of Campbell County, W. T. Roberts, then county surveyor of that county, was called on, in 1915, to survey T. 50, R. 72, and located the line in dispute approximately where it is now claimed to be by the defendants. No corners on the east line of T. 50, R. 72 were found, except the southeast and the northeast corners of the township. Roberts ran a straight line between these two corners according to the U. S. Government surveying manual. J. H. Harvey, on the other hand, who subsequently surveyed the same township, did not run a straight line clear through, but only from the southeast corner of the township for a distance of five miles, then angled west, and thence north, in order to connect with the northeast corner of the township. This, the witness stated, was an incorrect method. Subsequently Mr. Atherly, Surveyor General of the United States, surveyed the same township and established a line which approximated that of J. H. Harvey. This survey, however, was disapproved by the General Land Office, and according to a subsequent survey by the United States Government, the boundary on the east side of the township was established according to the method adopted by W. T. Roberts, and this survey was approved by the General Land Office on June 29, 1927. The defendants claim according to the line of this survey and moved their fence on to that line, which is about 191 feet west of the line claimed by the state, about the month of March, 1930.

It is clear from the foregoing testimony that the state has failed to sustain the burden of showing that the true line between its land and the land of the defendant is that claimed by it. The point in dispute, in fact, is whether the Roberts survey and the United States Government survey, approved in 1927, on the one hand, or the Harvey survey, on the other, is correct. The testimony of the witness Spielman is corroborated by Section 373 of the Man-

ual of Instructions for the Survey of the Public Lands of the United States, issued in 1930, and in the Instructions by the Secretary of the Interior of the United States for restoration of lost and obliterated corners issued on June 1, 1909. In Section 56 of the latter it is said:

"In the absence of such sight trees and other evidence regarding the line, as in an open country, or where such evidence has been destroyed by time, the elements, or the progress of improvement, the line connecting the known corners should be run straight from corner to corner."

In the case at bar there were, according to Spielman's testimony, no monuments or indications of any kind showing the section corners or other corners between the southeast corner and the northeast corner of Twp. 50, R. 72, and according to the foregoing instructions a straight line was required to be run between the known corners, in order to relocate the intermediate corners. The witness Spielman testified to the correctness of this method, and that was not followed by Harvey. We must assume, accordingly, that the true boundary between the lands of the state and those of the defendants is that claimed by the latter, and that they are the holders of the legal title to the land of which they are in possession. The principle, accordingly, stated in Bentley v. Jenne, 33 Wyo. 1, 236 Pac. 509, that a subsequent survey cannot affect the rights of the patentee and his successors in interest has no application in the case. The state, however, claims that it has brought itself within the rule of Carstensen v. Brown, 32 Wyo. 491, 236 Pac. 517, in that the boundary between the lands of plaintiff and defendants was established by recognition and acquiescence for a period of over ten years in the line as shown by the fence constructed by John F. Cates in 1907. But there is no evidence in the record to bring the case within the rule of the cited case. The existence of a division fence does not alone show the

requisite facts, for it may be kept up only for convenience of the parties. And the acquiescence must be by both parties in order to make it binding, and this involves notice or knowledge of the claim of the other party. Carstensen v. Brown, supra. In the case at bar the predecessors in interest of the state made no claim except one to the true boundary, not to the line of the fence constructed by Cates, for that fence, according to their testimony, was simply one for convenience. The land was not cultivated up to the fence, until the fall of 1919, when the state obtained ownership. The defendants received no notice or knowledge from the state that the latter claimed up to the fence, unless it be by reason of cultivation. But, according to the testimony in the record, such cultivation up to the fence was continued only up to 1927, and thereafter the state cultivated only up to the line which had been established by the United States Government survey approved in 1927, and that cultivation was so limited by the express direction of the agent of the state in charge of the experimental farm. Hence even if the period of acquiescence and recognition of the boundary established by the fence could be said to have commenced to run in the fall of 1919, it was not continued for the period of ten years, the time necessary in such cases, as held in Carstensen v. Brown, supra.

The state also claims that it acquired title by ten years' adverse possession in accordance with the rule laid down in City of Rock Springs v. Sturm, 39 Wyo. 494, 273 Pac. 908. This contention cannot be sustained. The adverse claim, if it was ever made, did not continue for the requisite period of ten years. It ceased when the state, through its agent, discontinued to cultivate its land beyond the true boundary, and acknowledged the line established by the United States Government survey as the true line. Even though the adverse claim commenced to run in 1919, it was interrupted by the state's acts and acknowledg-

440

ment, and could not, during this interruption, ripen into a title. 2 C. J. 101. While the state can acquire title by adverse possession (2 C. J. 226), no good reason has been pointed out why it should not be subject to the same rules incident thereto which apply in the case of private individuals.

The judgment of the trial court is, accordingly, affirmed.

*Affirmed.*

KIMBALL, Ch. J., and RINER, J., concur.